Argued 15 Nov.; decided 17 Dec., 1900; rehearing denied 4 May, 1901.

## WILLIAMSON *v*. NORTH PACIFIC LUMBER CO.

[63 Pac. 16; 64 Pac. 854.]

TRIAL — DUTY TO CONSTRUE WRITINGS.

1.   Where the conversation between the parties, so far as it related to the authority of plaintiffs to act for defendant in settling a controversy, was merged in a letter from defendant to plaintiffs, so that the authority must be determined therefrom, its construction is for the court, though it is to be construed in connection not only with a prior letter, but with· defendant's testimony as to how a clause happened to be added to the letter, and with the surrounding circumstances.

CONSTRUCTION OF WRITING.

2.   There being a difference between a vendor and a purchaser regarding the quality of goods delivered by one to the other at a distant city where the buyer had an agency, a letter by the vendor to the purchaser that "We will be satisfied with any settlement you may make for us in adjusting the matter at point of destination," is an authority to adjust the dispute through such agency.

EFFECT OF GENERAL OBJECTION TO AN INSTRUCTION.

3.   Where, in an action involving the authority of an agent, the objection to an instruction submitting the question to the jury was general, and challenged its sufficiency as a matter of law, plaintiff was entitled to contend on appeal that the instruction was erroneous, in that it left the construction of a written instrument constituting such authority to the jury, though the trial court may have proceeded on the theory that the authority rested partly in parol and partly in writing, and was therefore a question for the jury.

From Multnomah: ARTHUR L. FRAZER, Judge.

Action by Stephen Williamson and others, partners as Balfour, Guthrie & Company, against the North Pacific Lumber Company, a corporation, for reclamation on two cargoes of lumber purchased by the plaintiffs from the defendant, and shipped to ports on the west coast of South Africa. The defendant is a corporation engaged in the manufacture and sale of lumber at Portland. Plaintiffs are merchants doing business there and at other Pacific Coast points,

and are associated in business with the firm of Williamson, Balfour & Company, at Valparaiso, Chile. The Valparaiso firm receives orders in Chile for Oregon and Washington lumber, and sends them to the plaintiffs to be filled. The latter purchase the lumber from local manufacturers and ship it to Chile, where it is delivered to the buyer, and the profit and loss of the venture shared by the two companies. In February and March, 1896, the plaintiffs, to fill orders thus received, contracted with the defendant for two cargoes of lumber, in accordance with certain specifications, to be shipped on the ships Airlie and Ballochmyle to points on the coast of Chile. Each of the contracts contains the stipulation that, "in event of any dispute arising at port of discharge in regard to quality, sellers to appoint a representative on the spot to attend to and settle the same." After the Airlie had been loaded, it was discovered that by mistake some 40,000 feet of 4x12 lumber in excess of the amount called for by the specifications was included in her cargo. The defendant's attention was called to the matter, and it agreed that, if plaintiffs would take the excess, it "would stand good for anything that might crop up regarding it," or do "whatever was right in the matter." The cargo was thereupon accepted and paid for by the plaintiffs, but without inspection at Portland. The Airlie sailed in April, and reached her first port of discharge some time in June. On August 4 plaintiffs received from the Chilian firm information in regard to some difficulty about the stowage of her cargo and immediately transmitted the same to defendant, with the following letter:

"'PORTLAND, Or., August 4, 1896.
"*North Pacific Coast Lumber Company, City—*

"DEAR SIRS: We inclose herewith some correspondence from Valparaiso in regard to difficulty with the Airlie cargo, and will be glad to hear what you have to say on the subject.          Yours truly,
"BALFOUR, GUTHRIE & Co."

38 OR.—36.

The Airlie, having discharged a part of her cargo at Coquimbo, arrived at Iquique, her final port of discharge, the latter part of July. When the 4x12 lumber was tendered to the parties who had ordered it, they declined to take the 40,000 feet of excess, because it was inferior in quality and not ordered. The Ballochmyle was loaded and left Portland about the twenty-third of May, and discharged the upper assortment of her cargo at Antofagasta in August, but the buyers refused to accept it because it did not conform in quality to that ordered. When the Valparaiso firm was informed of the controversy at the port of discharge concerning the quality of the two cargoes, it immediately cabled the plaintiffs to that effect and asked for instructions. The cablegram was received at Portland on August 20, and Mr. Burns, the manager for the plaintiffs, immediatetly sent for the defendant's manager, Mr. Williams, but he was out of town at the time. Upon his return, on the twenty-second of August, he called at plaintiffs' office. Mr. Burns informed him of the intelligence plaintiffs had received from Chile as to the rejection of the lumber because of its inferior quality, and suggested that defendant send an agent down to settle the matter, or that the American consul or some other local person be appointed by it for that purpose. Mr. Williams declined to do this, saying it was impracticable, and, as plaintiffs contend, authorized them to adjust the matter.

After Williams left the office, Burns telephoned to him, saying that he would like to have plaintiffs' authority in writing, and thereupon Williams sent to the plaintiffs the following letter:

"PORTLAND, Or., August 22, 1896.
"*Messrs. Balfour, Guthrie & Company, City*—
"GENTLEMEN : In reply to yours of the fourth inst., with correspondence relating to the Airlie cargo, referring to the manner in which it was loaded, will say that the specifications, as we received them, stated that the cargo was to be loaded in two lots, one underneath and one on top, and the

lumber was furnished to the captain of the vessel in that way. In the portion to go underneath was some 140 M. feet, 12x12, with other lumber, some considerable of which was 40 feet long. He was not able to conveniently load such timber in the bottom of the vessel, and therefore loaded it between decks and on top. The writer on one occasion went aboard the vessel to see how the cargo was being loaded, but was informed that we had nothing whatever to do with the stowage of the vessel, that they knew nothing about there being two divisions of cargo, and that they did their business through Balfour, Guthrie & Company. However, we are satisfied that the vessel could have been unloaded properly at point of destination, as the lumber he had on deck was mostly 12x12, which could have remained in the vessel until the first division was discharged. Will say further that the cargoes of the Airlie and Ballochmyle were tallied by our regular tally man, a man of long experience, who says the lumber was all of first-class quality in every particular. However, we will be satisfied with any settlement you may make for us in adjusting the matter at point of destination.

"Yours truly,

"NORTH PACIFIC LUMBER Co.,
"E. T. Williams, Vice-President."

The plaintiffs cabled the Chilian firm to settle the dispute about the lumber as best they could, and on the twenty-fourth of November received the reports of the adjustment of the controversy, together with the original reports of the surveyors of the cargoes and of an expert called in to assist them, and immediately forwarded copies thereof to the defendant, with a demand for a reclamation of $325.73 on the shipment of the Airlie, and $3,087.15 by the Ballochmyle. The defendant refused to pay the amount demanded, putting its refusal on the ground that the lumber purchased from it by the plaintiffs was "as good as any lumber that your firm has ever purchased from us, and equal to any grade of merchantable lumber on the Pacific Coast," and hence this action. It was originally brought in the name of the plaintiffs, but afterwards the complaint was amended by making

the Chilian firm a joint plaintiff, and inserting an allegation
that it was a partner in the venture.   These amendments
were subsequently stricken out on motion of the defendant,
and the cause went to trial on an answr consisting of gen-
eral denials only, resulting in a mistrial.   Defendant was
afterwards permitted to file an amended answer, which pur-
ports to set up fraud in the settlement made by the Chilian
house.   The new matter in the amended answer was put in
issue by a reply, and on the second trial a verdict and judg-
ment were rendered in favor of the defendant, from which
the plaintiffs prosecute this appeal, assigning as error the
giving and refusal of certain instructions by the trial court.

                                              Reversed.

    For appellant there was a brief over the names of *Francis
D. Chamberlain* and *Fenton, Bronaugh & Muir,* with an
oral argument by *Mr. Chamberlain* and *Mr. Wm. D. Fenton.*

    For respondent there was a brief and an oral argument by
*Mr. Thos. N. Strong.*

    Mr. Chief Justice Bean, after stating the facts, deliv-
ered the opinion of the court.

    Although the complaint alleges and the answer denies that
the lumber rejected by plaintiffs' buyers in Chile was inferior
in quality and did not conform to the contract between plain-
tiffs and defendant, no evidence was offered by the plaintiffs
and none admitted on behalf of the defendant in relation to
the matter.   The plaintiffs relied entirely upon the fact that
their buyers had objected to the quality of the lumber at the
port of discharge, and that defendant had authorized them
to appoint the Chilian firm to settle and adjust such dispute.
In other words, the position of the plaintiffs is that the agree-
ment between them and the defendant in reference to the
settlement of the dispute, and the subsequent action had

thereon, was in fact a submission to arbitration and an award, and should be so treated. This was the view of the trial court; hence it excluded the testimony offered by the defendant showing or tending to show that the lumber was in fact of the quality specified in its contract with the plaintiffs. With this general view of the position of the parties, and the theory upon which the cause was tried in the court below, we proceed to notice such of the assignments of error as we deem material.

1. The first and most important one is the action of the court in giving the following instruction to the jury: "In construing the letter written August 4 by Balfour, Guthrie & Company, and its answer upon August 22, they must be construed together, and in the light of all the surrounding circumstances." The principal objection to this instruction is that it left the construction of the letter of August 22 to the jury, when it should have been construed by the court as a matter of law. The question as to whether the defendant authorized and empowered the plaintiffs to settle for it the dispute in regard to the lumber at the port of discharge is an important point in the case, and plaintiffs' authority in the premises is contained in the letter of August 22. The previous oral conversation between Burns and Williams was merged in the writing, so far as it related to the power or authority of the plaintiffs to act for the defendant in settling the controversy. It is admitted by Williams, and he so testifies, that, after he returned to his office, at Burns' request and for the purpose of putting plaintiffs' authority in writing, he added the clause to the letter of August 22 in reference to the quality of the cargoes of the Airlie and the Ballochmyle, and the statement that "we will be satisfied with any settlement you may make for us in adjusting the matter at point of destination." So that the question of plaintiffs' authority must be determined from the letter, and its construction, like that of any other writing, was a question for

the court, and not for the jury: 11 Enc. Pl. & Prac. 78 *et seq.; Long Creek Bldg. Assoc.* v. *State Ins. Co.,* 29 Or. 569 (46 Pac. 366); *Goddard* v. *Foster,* 84 U. S. (17 Wall.), 123; *Battershall* v. *Stephens,* 34 Mich. 68.

2. By the charge of the court, however, that question was submitted to the jury, and they were left to construe the letter, and to determine, as a matter of fact, whether by it the defendant authorized the plaintiffs to settle the controversy about the cargoes of the two vessels. The letter of August 22 should, of course, be construed in connection with that of August 4, Williams' testimony as to how the latter clause came to be added, and the surrounding circumstances; and, when so construed, it seems to us clearly to authorize the plaintiffs, through the Chilian firm, to settle or adjust the matter, and, if necessary, to appoint agents at the port of discharge to act for them in the premises. It is argued that the letter authorized the plaintiffs only to settle the matter, and that they could not delegate their authority to some one in Chile, although they might employ persons there to ascertain the facts and report to them. But it must be remembered that the controversy as to the quality of the lumber, to which the letter refers, was at the port of discharge, and not in Portland, and that under defendant's contract it was bound to appoint a representative on the spot to attend to and settle the same. It was this contract that Burns was insisting that Williams should comply with by sending an agent or representative to Chile, or by appointing some person there to act for defendant. Williams declined to do so, and agreed to be satisfied with any settlement that plaintiffs might make "at point of destination." He knew at the time that plaintiffs had an allied house in Chile, and that all of their business on that coast was done through such house. He must therefore necessarily have intended that the settlement should be effected in the same way.

It is next insisted that the court erred in refusing to with-

draw from the jury the question of fraud.   It is urged in support of this position that the allegations of the answer are insufficient to constitute the defense of fraud, and that there is no proof if the allegations had been sufficient.   As the case must be reversed and remanded for a new trial, defects in the answer, if any, may be cured by amendment; and, as the evidence may be different on another trial from that contained in the record, we shall pass this question without deciding.

There are several other questions made in the briefs and argued by counsel, but as they are closely allied to the principal one discussed, and may not arise on another trial, we shall refrain from discussing them at this time.

REVERSED.

Decided 4 May, 1901.

ON PETITION FOR REHEARING.

MR. CHIEF JUSTICE BEAN delivered the opinion.

3.   The objection to the instruction complained of was a general one, and challenged its sufficiency as a matter of law *(Nickum* v. *Gaston,* 24 Or. 380, 33 Pac. 671, 35 Pac. 31) ; and hence plaintiffs were entitled to contend in this court that it was erroneous, because it left the construction of a written instrument to the jury, although the trial in the court below may have proceeded in the main on the theory that the plaintiffs' authority rested partly in parol and partly in writing, and was therefore a question of fact for the jury. Indeed, it would seem natural that such a theory should have prevailed; for it was not until after plaintiffs' testimony was all in, and Mr. Williams, the manager of defendant company, testifying on its behalf, said that the clause in the letter of August 22 in reference to the settlement of the dispute concerning the quality of the lumber was added by him, at Mr. Burns' request, for the purpose of putting plaintiffs'

authority in writing, that it appeared that plaintiffs' authority rested wholly in writing. This, perhaps, explains the reason for the introduction by plaintiffs of some of the testimony referred to in the petition, and also disposes of the contention that the question of plaintiffs' authority was properly submitted to the jury because it rested partly in parol. We have not considered the question as to whether the agreement between plaintiffs and the defendant in reference to the settlement of the dispute, and the subsequent action had thereon, was a submission to arbitration and an award, because it is not presented by the record, nor was it discussed at the argument. All we decide is that the defendant, by the letter of August 22, authorized the plaintiffs, through their Chilean house, to settle and adjust the dispute at the port of discharge concerning the quality of the lumber. Whether in making the settlement the plaintiffs and their representatives acted honestly and in good faith is a question hereafter to be determined. The petition is denied.

REHEARING DENIED.