Argued 13 October; decided 27 October; rehearing denied 8 December, 1902.

## WILLIAMSON *v.* NORTH PACIFIC LUMBER COMPANY.

[70 Pac. 387, 532.]

SALE—AGREEMENT CONCERNING EXCESS ABOVE CONTRACT.

1. Plaintiffs purchased a cargo of lumber from defendant under a written contract, and defendant by mistake loaded a quantity of lumber, in excess of that ordered, on the vessel, whereupon plaintiffs advised defendant that they would not permit the ship to sail without some understanding as to the excess; and defendant stated that, as it could not be conveniently removed, defendant would do whatever was right in the matter, or would stand good for anything that might occur regarding it, if plaintiffs would allow it to remain on the vessel, and ship the same, which plaintiffs did. *Held,* that such excess should not be treated as having been purchased under the terms of the contract covering the remainder of the cargo.

SALES—AGENCY.

2. Defendant sold lumber to plaintiffs to be shipped abroad, the contract of sale providing that, in the event of dispute at the port of discharge as to the quality of the lumber, defendant should appoint a representative on the spot to settle it. A dispute arose, and defendant, on notice, refused to appoint an agent, writing plaintiffs: "We will be satisfied with any settlement you may make for us in adjusting the matter at the point of destination." *Held,* that such transaction amounted to the appointment of plaintiffs as defendant's agents to settle the matter, but did not constitute plaintiffs an arbitrator, whose award or settlement was binding on defendant until impeached or set aside by a court of equity.

SALE—EFFECT OF SETTLEMENT BY AGENT.

3. Where defendant sold plaintiffs lumber for shipment, and agreed that, if any dispute should arise at the port of discharge, defendant would appoint an agent to settle the same, and thereafter, on a dispute arising as to the quality of the lumber, appointed plaintiffs to settle the dispute, an instruction, in an action, by plaintiffs, to recover an allowance made, that unless the lumber failed, in some material particular, to fulfill the terms of the contract in respect to quality, plaintiffs could not recover, was erroneous, since, though the lumber in fact conformed to the contract, defendant was bound by the settlement, in the absence of fraud.

EVIDENCE—INFERENCE OF FRAUD.

4. Fraud is a question of fact, and, like other facts, may be established by inference ; under which rule there was enough shown in this instance to carry the case to the jury.

AGENCY—RIGHT TO SHOW FRAUD.

5. As to certain lumber shipped by defendant, plaintiffs were from the first its agents to sell and dispose of it to the best advantage ; and, as to other lumber shipped and bought by them from it, they were subsequently appointed its agents to settle the dispute as to quality. *Held,* that defendant's right in the two cases to question their action on the ground of fraud was identical.

From Multnomah: JOHN B. CLELAND, Judge.

This is an action by Stephen Williamson and others, doing business under the firm name of Balfour, Guthrie & Co., against the North Pacific Lumber Company for reclamation on lumber purchased by the plaintiffs, a Portland firm, from the defendant, an Oregon corporation, for shipment to the west coast of South America, on the joint account of themselves and Williamson, Balfour & Co., of Valparaiso. In the months of February and March, 1896, to fill orders they had previously received, the plaintiffs contracted with the defendant for two cargoes of good, merchantable lumber, "equal to best Puget Sound pine," in accordance with certain specifications, at $6.50 per thousand feet, to be shipped to South America on the Airlie and Ballochmyle. Each of the contracts contained a stipulation that, "in event of any dispute arising at port of discharge in regard to quality, sellers to appoint a representative on the spot to attend to and settle the same." By mistake there was loaded on the Airlie 40,000 feet of 4x12 lumber not called for by the contract. The plaintiffs refused to allow the ship to leave port with such lumber until defendant had agreed to do whatever was right in the matter. The cargo was thereupon paid for by the plaintiffs, but without inspection at Port-

land. When the Airlie reached her destination, plaintiffs' purchaser declined to accept the 40,000 feet excess, because it was inferior in quality and had not been ordered. The Ballochmyle's cargo was likewise paid for by the plaintiffs without inspection at Portland, but when the ship reached her destination the buyers of the upper assortment (amounting to about 500,000 feet) refused to accept it, assigning as their reason therefor that it did not conform in quality to the contract. The plaintiffs immediately informed Mr. Williams, the manager of the defendant company, of the dispute or controversy in regard to the quality of the two cargoes, whereupon he advised the plaintiffs by letter, under date of August 22, 1896, that "we will be satisfied with any settlement you may make for us in adjusting the matter at point of destination." The plaintiffs then cabled their Chilian firm to settle the dispute, and it allowed the purchasers a deduction on account of the poor quality of the lumber, which amounted, together with the other expenses incident to the matter, to $325.73 on the shipment by the Airlie, and $3,087.15 on that by the Ballochmyle. The defendant refused to abide by the settlement, or to reimburse the plaintiffs for any alleged loss on either of the cargoes; hence this action. This is the second appeal. The facts are stated more in detail in the former opinion: *Williamson* v. *North Pacific Lum. Co.* 38 Or. 560 (63 Pac. 16, 64 Pac. 854). After the case was thus reversed and remanded, a retrial resulted in a verdict and judgment for the defendant, and plaintiffs again appeal, assigning error in the giving and refusing of certain instructions by the trial court.

REVERSED.

For appellants there was a brief and an oral argument by *Mr. Francis D. Chamberlain.*

For respondent there was a brief and an oral argument by *Mr. Thomas N. Strong.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

There are substantially four questions for decision: (1) Is

the 40,000 feet excess of 4x12 stuff shipped on the Airlie to be treated as if purchased under the terms of the contract for the remainder of the cargo? (2) Is the settlement of the controversy about the quality of the lumber between plaintiffs and their vendee, which was made by plaintiff's agents at the port of discharge, under the authority conferred by defendant's letter of August 22, 1896, in the nature of an award, and binding on the defendant until impeached or set aside by a court of equity, or were the plaintiffs and those acting for them mere agents of defendant, to represent it in the settlement of such controversy? (3) If the lumber delivered by the defendant conformed to the contract, would that fact alone be a complete defense to this action? (4) Was there sufficient evidence to carry the question of fraud in the settlement to the jury?

1. When the plaintiffs discovered that the 40,000 feet excess had been placed aboard the Airlie, Mr. Williams, the defendant's manager, was advised that they would not permit the ship to sail without some understanding as to the excess. Williams said it had been placed on the vessel by mistake, but, as it could not be conveniently removed, the defendant would do whatever was right in the matter, or would stand good for anything that might crop up regarding it, if the plaintiffs would allow it to remain on the vessel and take it to Chile. With this understanding, plaintiffs received and paid for the excess; but, in our opinion, there was no intention that it should be delivered by the defendant or received by the plaintiffs under the written contract, and therefore the rights of the parties with reference to the excess are not to be determined by the provisions of such contract. The effect of the arrangement was that plaintiffs should take the lumber put aboard by mistake to South America, and there sell it to the best advantage; defendant to reimburse them for any loss they might suffer on account thereof. This was the theory of the trial court, and there was no error upon this branch of the case.

2. It is contended that, under the authority conferred upon

plaintiffs by the letter of August 22d, they had a right, through their Chilian house, to decide the controversy or dispute concerning the quality of the lumber shipped by the Ballochmyle, and that such decision is in the nature of an award, binding on the defendant until impeached in a court of equity for fraud. Where one of the parties to a contract, either before or after a dispute concerning its performance arises, agrees that the other party shall settle or determine the question in controversy, the decision made is binding and conclusive in the absence of fraud (*Matthew* v. *Ollerton*, 4 Mod. 226), or, where work is to be done or goods manufactured or furnished to the satisfaction of the employer or vendee, it is for him alone to determine the acceptability of the work or goods, and it is not enough that the refusal to accept was unreasonable or without just foundation: *Brown* v. *Foster*, 113 Mass. 136 (18 Am. Rep. 463); *Zaleski* v. *Clark*, 44 Conn. 218 (26 Am. Rep. 446); *Gibson* v. *Cranage*, 93 Mich. 49 (33 Am. Rep. 351); *McCarren* v. *McNulty*, 7 Gray, 139; *Tyler* v. *Ames*, 6 Lans. 280. But we do not think this case comes with the doctrine of any of these decisions. The authority of the plaintiffs was derived from the letter of August 22d, which empowered them to adjust the dispute concerning the quality of the lumber, and, if necessary, to appoint agents at the port of discharge for that purpose; but it did not authorize them, or their representatives in Chile to act as arbitrators, or to decide the controversy then existing as to the quality of the lumber. Burns, the plaintiffs' manager, testified that he advised Williams that plaintiffs had received information from Chile that their buyer refused to accept the lumber because of its quality; that he asked him what he intended to do about it, and suggested that he appoint some one to look after the matter, and that Williams said the defendant had no one at the port of discharge that could attend to the settlement, and would leave it to the plaintiffs to do the best they could. Both Burns and Williams testified that the letter of August 22d was the result of this conversation, and was written at the request of Burns for the purpose of putting plaintiffs' authority in writing. As we construe the letter, the

plaintiffs were merely authorized to act for and represent the defendant in the settlement of the controversy or dispute about the quality of the lumber, and defendant agreed to be satisfied with any settlement they might make in good faith. Under its contract, the defendant, in the event of a dispute at the port of discharge, was bound to appoint an agent on the spot to represent it in the settlement thereof. It was this provision that Burns was insisting that Williams should comply with. Instead of appointing some third person, Williams preferred to authorize the plaintiffs to act for the defendant in that regard. If some one other than the plaintiffs had been appointed, and, in good faith and with reasonable business prudence, had adjusted and settled the controversy by allowing plaintiffs' purchasers a rebate or deduction on account of the quality of the lumber, the settlement would evidently have been binding on the defendant, even if it afterward appeared that the lumber was in fact up to the requirements of the contract. In such case, it would have been sufficient that a *bona fide* dispute existed, and that defendant's authorized agent, in good faith, settled and adjusted it, although he may have been mistaken as to the quality of the lumber. The same rule, it seems to us, should apply to the settlement made by the plaintiffs, acting as the defendant's agent. They were authorized to act for the defendant in making the settlement, and had a right to employ such agents or means to accomplish that purpose as were customary or usual in such cases; and if they acted honestly and in good faith, and with proper business caution, the settlement is binding on the defendant, regardless of the actual quality of the lumber. The proof as to the quality was competent and material as bearing on the question of fraud, but good quality alone would not be a defense, if the settlement was actually made in good faith.

3. The charge of the court that, unless the lumber failed in some material particular to fulfill the terms of the contract in respect to quality, the plaintiffs could not recover, evidently proceeded on the mistaken theory that, by the delivery aboard the vessel at Portland of lumber of the kind and quality speci-

fied in the contract, defendant had fulfilled all the obligations on its part. But this view overlooks the provision in the contract that, in case of a dispute arising at the port of discharge regarding the quality of the lumber, defendant was to appoint an agent at that place to settle and adjust the matter. In other words, the defendant not only agreed to deliver lumber on board the vessel, of the kind and quality called for, but also that, in the event of a controversy as to its quality at the port of discharge, it would, through an agent or representative on the spot, settle or adjust the dispute; and therefore, although the quality of the lumber may in fact have been according to the contract, defendant is still bound by any fair and honest settlement concerning the same at the port of discharge made by its authorized agents or representatives.

4. It is contended that there was no evidence of fraud or want of good faith in the settlement alleged to have been made by the plaintiffs, and that there was error in submitting that question to the jury. As the plaintiffs were the agents or representatives of the defendant, the law exacted from them the utmost good faith (Mechem, Agency, § 454), and slight indications of improper conduct, although insufficient to make out a case of fraud if the parties stood at arm's length, would be sufficient to raise a presumption against the validity of the transaction, which it would be necessary to overcome by proof: 1 Bigelow, Fraud, 301. Now, there was no direct evidence of fraud, but there was evidence tending to show, and from which the jury were justified in finding, that the lumber delivered by defendant was of the kind and quality called for by the contract, and that the settlement was made without informing it of the nature of the dispute or the amount of reclamation claimed. This, in connection with the fact that the purchasers of the remainder of the cargo accepted it without question, was, in our opinion, sufficient to entitle the defendant to have the question submitted to the jury as to whether the discount allowed by plaintiffs or their representatives in Chile to their purchasers, amounting almost to the selling price of the lumber, was so grossly extravagant and unreasonable as to show a want of

good faith in the settlement. Fraud is a question of fact, but it need not be shown by positive evidence, as this can seldom be done. It is generally proved by circumstantial evidence, and may be established by inference, like any other disputed fact. "To establish fraud," says Mr. Justice BRADLEY, "it is not necessary to prove it by direct and positive evidence. Circumstantial evidence is not only sufficient, but in most cases it is the only proof that can be adduced": *Rea* v. *Missouri,* 84 U. S. (17 Wall.) 543. And Mr. Justice BUSKIRK says: "A court or jury cannot presume the existence of fraud in the absence of evidence, but a presumption may arise from the facts and circumstances proved that the transaction was tainted with fraud": *Farmer* v. *Calvert,* 44 Ind. 209. See, also, Bump, Fraud. Conv. (2 ed.) 582, and *Burgert* v. *Borchert,* 59 Mo. 80. Within the doctrine of these cases and the general rules governing the subject, we are of the opinion that there was sufficient evidence to go to the jury on the question of fraud, and that there was no error in submitting it.

Because of the instruction, however, that, unless the cargo of lumber failed in some material particular to fulfill the terms of the contract in respect to quality, plaintiffs were not entitled to recover, the case must be reversed, and a new trial ordered.

REVERSED.

Decided 10 November, 1902.

ON PETITION FOR REHEARING.

MR. JUSTICE BEAN delivered the opinion.

5. Without questioning the main opinion, the defendant, in view of another trial, petitions the court to indicate more clearly its views as to whether its defense of fraud is applicable to the claim for reclamation on the excess of 40,000 feet of lumber in the cargo of the Airlie; and, in that connection, attention is called to the ruling of the trial court on the motion for a new trial, which it is suggested indicates that in the opinion of that court, such a defense was confined alone to the upper assortment of the Ballochmyle's cargo. We can see no

difference, so far as the right to set up the defense of fraud is concerned, between the two causes of action. It is true, the two cargoes were received by the plaintiffs under different contracts; but, in the matter of the excess in the Airlie's cargo, they were the agents of the defendant from the beginning, to sell and dispose of it to the best advantage, and, as to the Ballochmyle's cargo, they became agents, by subsequent contract, to settle the dispute as to quality at the port of discharge. In either case they were required to act honestly and in good faith, and whether they did so, or not, was a question for the jury. Their obligations to the defendant were practically the same as to both cargoes, and the defendant's right to question their good faith is identical, regardless of the fact whether the lumber then constituting the two cargoes was received under the same contract or not.

As a new trial was ordered on the plaintiff's appeal, it was unnecessary to consider the questions presented by the cross-appeal, except in so far as it affects the matter of costs; and, inasmuch as the conclusion we have reached virtually upholds the defendant's contention respecting its rights to have the question of fraud as to the excess of the Airlie cargo submitted to the jury, it is entitled to recover such costs as it may have made on account of the cross-appeal.

REHEARING DENIED.