## WILLIAMSON v. NORTH PACIFIC LUMBER CO.

[73 Pac. 7.]

INSTRUCTIONS ON IRRELEVANT ISSUES.

1. Instructions to juries should not deal with issues outside the pleadings and the evidence, and when such instructions are requested they may be refused.

SALES—INSTRUCTION AS TO GOOD FAITH OF AGENT.

2. Defendant sold lumber to plaintiff to be shipped to plaintiff's customers in another country; the contract providing that, if a dispute arose at the port of discharge as to the quality of the lumber, defendant should appoint an agent on the spot to settle it. A dispute arose, and defendant appointed plaintiff its agent to settle. Plaintiff selected certain surveyors to examine the lumber and report what allowance should be made to the buyers. These surveyors recommended a certain reduction, and plaintiff settled with the buyers on this basis. Under these facts an instruction that if plaintiff's foreign house used reasonable care in selecting surveyors to examine the lumber, and in reliance on their report settled the dispute in good faith, the defendant is bound by such settlement, was properly refused as being inappropriate, for the surveyors were merely a means used by the plaintiffs and were in no sense agents of defendant.

INSTRUCTION AS TO CREDIBILITY OF EVIDENCE BY DEPOSITION.

3. Under a statute allowing evidence by oral examination or deposition, the refusal of a requested charge that the fact that a witness testifies by deposition

43 Or.—22.

does not affect his credibility is not error, where there are no peculiar circum_
stances attending the introduction of depositions which call for such a charge.

INCONSISTENT RULINGS.
4. The exclusion as irrelevant of evidence as to a matter not in controversy,
and the refusal of a request to charge that this matter was not in controversy, are
not erroneous, as inconsistent.

From Multnomah: JOHN B. CLELAND, Judge.

Action by Stephen Williamson and others doing busi-
ness under the firm name of Balfour, Guthrie & Co. against
the North Pacific Lumber Company. From a judgment
for defendant plaintiffs appeal.    AFFIRMED.

For appellants there was a brief and an oral argument
by *Mr. Francis D. Chamberlain.*

For respondent there was a brief and an oral argument
by *Mr. Thomas N. Strong.*

MR. JUSTICE WOLVERTON delivered the opinion.

This case having been here twice before, the statement
of facts on the second appeal will suffice to indicate the
issues now involved, except it is deemed essential that
further notice should be taken of the nature of the sepa-
rate defenses interposed to the causes of action set up in
the complaint. Concisely stated, they are that defendant
appointed the plaintiffs its representative and agent, upon
the terms stated, to settle and adjust certain alleged dis-
putes with the purchasers of the lumber in question, which
appointment and trust was duly accepted; that plaintiffs,
in violation of their said trust and agency, conspired and
confederated with Williamson, Balfour & Co., of Valpa-
raiso, Chile, to defraud defendant, and pretended to dis-
pose of the excess of the Airlie cargo at forced sale as in-
ferior lumber, and to submit the alleged dispute as to the
upper assortment of lumber of the Ballochmyle to arbi-
tration and award, and caused the pretended arbitrators
to decide and report that the buyers should be allowed a
discount of thirty per cent from the agreed price, and that

in pursuance of said pretended and unauthorized arbitration and award they pretended to sell said upper assortment of the Ballochmyle, also at forced sale, as inferior lumber; that said pretended sales were secretly made, and without the knowledge of the defendant; that the alleged dispute, both as to the quality of the excess of the Airlie and the upper assortment of the Ballochmyle, was simulated only and fictitious, when none.such really existed; and that said pretended settlement, arbitration, and sale were and are fraudulent, unreasonable, and extortionate, and as to the defendant are of no binding validity or effect. This brings us to the numerous assignments of error, and we will consider them much in the order presented.

1. The court refused to instruct that "there is no evidence in the case that either plaintiffs or their Valparaiso house submitted the matters in dispute, or either of them, to arbitration, and there is no such question in the case." This instruction was manifestly requested on the part of plaintiffs, in view of the separate defense interposed to its second cause of action. To be understood, it should be premised that at the first trial of the cause, in both the circuit and in this court, plaintiffs proceeded upon the theory that the agreement between the parties with reference to the settlement of the dispute and the subsequent action had in pursuance thereof was in effect a submission to arbitration and award, and should be so treated: *Williamson* v. *North Pac. Lum. Co.* 38 Or. 560 (63 Pac. 16, 64 Pac. 854). The further defense was therefore intended, among other things, to meet this theory and contention of plaintiffs, and to put defendant in a position to show, not only that the alleged dispute was simulated and fictitious, but that no arbitration was ever had or award made, or, if there was, it was without the authority of defendant, and not binding upon it. By the decision on the second appeal it was definitely determined that the appointment

of the plaintiffs as agents to settle the alleged dispute did not constitute them, or the allied house at Valparaiso, Chile, arbitrators, whose award or adjustment was binding upon defendant until appropriately impeached or set aside: *Williamson* v. *North Pac. Lum. Co.* 42 Or. 153 (70 Pac. 387). Now, as we understand from the record, the theory that the alleged settlement by the plaintiffs through their allied house at the port of discharge was tantamount to an arbitration and award was no longer insisted upon; but it was contended that the settlement by the agent was, in the absence of fraud, itself conclusive and binding upon defendant. Thus the arbitration theory dropped entirely out of the case, and with it all necessity or attempt on the part of defendant to combat it. Indeed, defendant had never relied upon arbitration as a defense, and never attempted to establish such a feature in the case. When called upon, defendant offered to show that no such arbitration or award was ever had or made with its consent or authority; but, when the plaintiffs ceased to insist upon the theory that the alleged settlement was in effect an award of arbitrators, all contention upon that point was at an end, and defendant could not and did not offer in evidence anything to combat it, and thus was the issue entirely eliminated from the case. No one insisted upon it, one way or the other, and the instruction asked could serve no good or practical purpose, and was therefore very properly refused.

The court refused to instruct, as requested, that defendant's allegations of fraud with reference to the settlement of the dispute touching the upper assortment of the Ballochmyle were not supported by the evidence. This constitutes the second assignment of error. The evidence in regard to the subject was as full upon this trial as at the preceding one, and plaintiffs are therefore concluded by

the decision on the second appeal: *Williamson* v. *North Pac. Lum. Co.* 42 Or. 153 (70 Pac. 387).

The third assignment relates to the refusal of the court to give an instruction amply covered by the general charge, and the sixth assignment is of the same nature.

2. The fourth and fifth assignments may be examined together. They are founded upon the court's refusal to instruct that if plaintiff's Valparaiso house used reasonable care in selecting surveyors to examine the upper assortment of the Ballochmyle, and after examination the surveyors recommended that an allowance of thirty per cent be made to the buyers, and that if, relying upon such report, the Valparaiso house made the allowance in good faith, believing it to be to the best interest of the defendant, then that defendant is bound by the settlement. In other words, it is insisted that if the Valparaiso house used reasonable care and circumspection in the selection of subagents at Antofagasta to examine the cargo, and subsequently in good faith acted upon their advice and report, then defendant would be bound by the settlement thus effected, even though the subagents were guilty of fraud, and that neither the plaintiffs nor the Valparaiso house are responsible for the acts of the subagents. It is in evidence that, in settling with the buyers of the upper assortment of the Ballochmyle, the Valparaiso house, through their agent at Antofagasta, a port six hundred miles distant, appointed two British merchants, acquainted with the business, to survey the lumber and report to them what allowance, if any, should be made to the buyers; that these surveyors called to their assistance an expert, and after an extended examination reported to the Valparaiso house that the lumber was much inferior to the grade contracted for, and that an allowance of thirty per cent from the contract price should be made to them; that thereupon the Valparaiso house negotiated with the buyers, and they took

the lumber at the reduction suggested; and that all the parties concerned were reputable, competent, and honest.

As applied to these facts, we do not believe that the instructions asked were warranted. It appears that the Valparaiso house, through their agent at Antofagasta, employed the surveyors as instrumentalities, with the view of obtaining information relative to the condition and value of the lumber, deemed necessary, presumably, for their guidance in negotiating a settlement with the buyers. The surveyors were acquainted with the lumber business, and their report to the Valparaiso house was made after an investigation in which they were assisted by an expert on lumber. After thus possessing themselves of such information, the Valparaiso house negotiated a settlement with the buyers on the basis of the report. The surveyors were not given authority to confer with the buyers, or to make or enter into any settlement whatever with them. Their only function was to gather information and report it to the Valparaiso house. This they did, and the house thereafter conducted and negotiated the settlement through their agent at Antofagasta. The case does not differ in principle from one where the agent has conducted the examination in person. The surveyors were the agents of the Valparaiso house, if that is a fit term to apply to them, and not of defendant, and it was through them that plaintiffs sought the desired information that was to control their action in negotiating the settlement with the buyers. Suppose the Valparaiso house had gone in person to Antofagasta, and had made personal inquiry of those very men who acted as surveyors as to the value and quality of this cargo, and they had answered, "We will make further inquiry, and then give you an estimate," and that, after having conferred with an expert on lumber and made an examination, they reported the result, and the Valparaiso house had acted upon it; could it be said that the sur-

veyors were constituted the subagents of defendant? They were only employed as the means or source of information for the Valparaiso house, and, whether or not they were in a sense an agency through which the information was acquired, they were in no sense constituted the agents of the defendant whose acts were conclusive and binding upon it. Nor were they employed for any such purpose as to settle the dispute in the stead of the defendant, as were the plaintiffs or their Valparaiso house. So that these instructions requested were inapt, under the facts in evidence.

The seventh assignment is that the court erred in not instructing that plaintiffs were entitled to recover the expenses incurred in settling the dispute, unless the Valparaiso house intended to defraud the defendant; but, the verdict being in its favor, the jury evidently must have found that plaintiffs or their Valparaiso house were guilty of fraud in conducting and making such settlement, and, the action having been based thereon, the defendant could not be made liable for the expenses of a fraudulent settlement.

The eighth assignment relates to the order overruling plaintiffs' demurrer to the separate defense to their second cause of action. It is based upon the erroneous theory that defendant pleaded a submission of the controversy to arbitration and award. The purpose of such defense was to avoid what the plaintiffs were insisting upon as an arbitration and award. In this view the demurrer was properly overruled.

In the ninth assignment three objections are urged to an instruction given. The first is that it conveyed the impression to the jury that, if the settlement was vitiated by fraud, plaintiffs should not recover anything. But the language employed is not susceptible of such a construction. The jury were told that, if they found that the set-

tlement was fraudulent, then the plaintiffs could not recover thereon; that is, upon the settlement. The instruction was in line with plaintiffs' theory of the action — that they were entitled to recover upon the settlement made. The second objection involves a criticism of the use of the word "constructively," as qualifying the term "fraudulent," in their claim that the answer charges actual fraud, and that the defendant should have made out a case of intentional fraud. The criticism is technical and unavailing, especially after verdict. The answer is broad enough in its scope to admit of the proof offered, and the instruction complained of is well adapted to such proof. The third objection is that there was no evidence that anything was deliberately concealed from the defendant upon which to warrant the instruction that if, in connection with other conditions enumerated, the jury found that the Chilean house deliberately concealed from defendant information necessary to its protection, then that plaintiffs could not recover. The whole course of the dealings between the parties with reference to the sale and settlement on account of this lumber was before the jury. There was some evidence of irregularities attending it, both of omission and commission, and it was not improper to inform them that, if any such information had been deliberately concealed from the defendant, this would constitute a badge of fraud; and such is the effect of the instruction.

The tenth assignment goes to the instruction given, that "if you fail to find from the evidence under these instructions that plaintiffs have been damaged by reason of the excess shipment of 39,608 feet, you should find for the defendant on the first cause of action, the excess shipment on the Airlie." This is, however, but a logical deduction from the previous instruction relative to the subject, to which no exceptions were saved, and was relevant to the issues.

3. The eleventh assignment relates to the refusal of the court to instruct that the fact that a witness testifies by deposition does not affect his credibility. The statute provides the manner of producing evidence, which may be by oral examination, or by deposition under certain conditions. No distinction is made as to the weight to be given to evidence, whether produced by the one method or the other, and, unless there are some peculiar conditions or circumstances attending the production of evidence by deposition, such as to warrant the court in directing special attention to the matter, so that the jury may give it due weight and credibility, the court may without impropriety refuse to instruct upon the subject.

4. The twelfth assignment involves a ruling of the court in refusing to allow a witness for plaintiffs to testify to the quality of the flooring that went into the upper assortment of the Ballochmyle, compared with the flooring called for by the contract, and in refusing to instruct that the jury should not consider the quality of the lower assortment of the Ballochmyle and the cargo of the Airlie, except the excess, and that such cargoes are not in controversy; it being insisted that these rulings are inconsistent, and, therefore, that there was error either in the one respect or the other. The fact is there was no dispute whatever concerning the flooring that went into the upper assortment of the Ballochmyle, and no controversy with reference to the lower assortment, or to the cargo of the Airlie, except the excess. The evidence offered was, therefore, irrelevant. Neither could the instruction requested serve any purpose pertinent to the issues. So that, both being irrelevant, the rulings were not inconsistent, nor subject to the objections interposed; hence there was no error.

The instruction refused involved by the thirteenth assignment is sufficiently covered by the general charge.

The fourteenth and fifteenth assignments are relative to

instructions refused which were wholly inappropriate.

The sixteenth assignment is fully disposed of by the consideration of the ninth.

The seventeenth and eighteenth involve instructions requested which were unnecessary in view of the general charge.

The nineteenth, twentieth, twenty-first and twenty-second relate to the sufficiency of the separate defenses to charge fraud and the evidence to support such a charge; but from what we have already said it must now be apparent that they cannot be entertained. These considerations affirm the judgment of the trial court, and it is so ordered.                                            AFFIRMED.