[Filed October 17, 1887.]

## W. W. SWEENEY, RESPONDENT, *v.* L. J. McLEOD ET AL., APPELLANTS.

CONTRACT—LOBBY SERVICES—PUBLIC POLICY.—A contract whereby one undertakes to perform "lobby services" for another for a consideration is against public policy and void.

SECTION 638 OF THE CRIMINAL CODE—EFFECT OF.—The sole purpose and effect of this section was to make lobbying under the circumstances therein described *criminal*, and not to render lobbying under any conditions so far lawful that the courts would enforce contracts for such services.

APPEAL from Multnomah County. Reversed.

*Zera Snow*, for Appellants.

*H. T. Bingham*, for Respondent.

STRAHAN, J.—The material portions of the complaint in this action are as follows: That on the twelfth day of December, 1886, the defendants employed plaintiff as their agent, to procure evidence to be submitted to the legislature of the State of Oregon, which was soon thereafter to convene, or to such committee of said legislature as might be appointed to investigate the subject, that the method of taking salmon fish by means of fish-wheels at the fishery of the defendants at Celilo, Oregon, was not detrimental to the salmon fishing interests of the State, and was not more destructive of fish than other methods of capture. And they employed plaintiff to attend said session of the

legislature, and by means of all *legitimate importunity* and submission of evidence, to prevent the passage of any law prohibiting the taking of salmon by fish-wheels.   And, as a consideration for such services, to be done and performed by the plaintiff for the defendants as aforesaid, defendants agreed and promised to pay the plaintiff as much as his said services were reasonably worth, and to pay him for all moneys he should pay out in the doing of said services for which he was employed by the defendants, as aforesaid, and also agreed to pay him his outlay in expenses in attending the said session of the legislature.   That in pursuance of said hiring and agreement, plaintiff did procure such evidence, and did submit the same to the several committees appointed by the legislature for the investigation of fish-wheels for the taking of salmon fish by the defendants and others, *and by his efforts induced favorable reports by the said committees* allowing the use of fish-wheels, but providing for open days in each week when the wheels should not be used for the taking of fish; *and finally succeeded in preventing any legislation prohibiting the use of fish-wheels* for the taking of salmon fish.   The amended complaint then alleges various sums of money paid out by plaintiff as "expenses necessarily incurred," amongst which are one hundred dollars paid Henry Johnson, and fifteen dollars for three boxes of cigars used in the entertainment of members of the legislature while in the employment of defendants as aforesaid.

The defendants' answer denies the material allegations of the complaint, and then alleges, by way of separate defense, that about the 12th of December, 1886, the defendants engaged the plaintiff to attend the session of the legislature of the State of Oregon, thereafter shortly to convene, and to appear before said legislature and said committees of said body as might have the subject in charge, then and there to make any argument and showing that the taking of fish by means of fish-wheels was not injurious to the fishing interests of the State; that at the time of such employment, plaintiff had been engaged by other persons interested in and engaged in the business of fishing by means of fish-wheels, for a similar service in their behalf by the plaintiff; in consideration whereof the plaintiff agreed to accept and receive

from the defendants the sum of ninety dollars in full satisfaction and settlement for all service rendered under the engagement and employment by the defendants, as aforesaid, and of all expenses incurred in the course of the same, which sum was then and there, at the time of such engagement and shortly thereafter, and prior to the commencement of this action, paid to plaintiff by the defendants, and the plaintiff agreed to perform no service and incur no expense other than such as by the said sum of ninety dollars would be thereby paid for, and that this is the same service mentioned in complaint and none other. A further defense alleges that at and during all the time mentioned, while the plaintiff was performing such service, he was also secretly in the employment of other persons representing the same interests, and received divers sums of money therefor and kept the same concealed from the members of the legislature; but on the contrary, the plaintiff gave it out and caused it to be understood among members of the legislature that he was not so employed by any persons interested in the taking of fish by means of fish-wheels, and had no pecuniary interest therein, but was acting wholly in the public interests, biased by no private interest or employment, intending then and there and thereby to exercise a greater influence with said members of the legislature and of said committees, and intending then and thereby and by the secrecy and deception aforesaid to corrupt the judgment and understanding of the said legislature, and of the members thereof.

Another defense alleges that for ninety dollars the defendants employed the plaintiff to appear before the legislature, then about to convene, and make an *argument*, and by means thereof a showing before such legislature and such committees thereof as might have the subject in charge, that the taking of salmon by means of fish-wheels was not injurious to the fishing interests of the State, and not more injurious than the taking of fish by other means. That plaintiff failed to appear before the legislature, or any committee thereof, or to make any *argument*, but instead thereof did then and there act wholly as a "lobby member" in the interests of the taking of fish by means of fish-wheels, and then and there in the lobby chambers and corridors of said

legislative hall, and on the street, and at the hotels and boarding-houses in the town of Salem, when said legislature convened, personally importuned divers and sundry members of said legis-lature and of its committees in the interests of the taking of fish by means of fish-wheels, and did then and there, as such "lobby member," at the places aforesaid, seek to use his personal influence with the members of said legislature and of said committees, with many of whom the plaintiff was personally acquainted, in the interest of fishing by means of fish-wheels; and did expend of the money so paid plaintiff as aforesaid, large sums of money in liquors, cigars, and dinners, in entertaining said members of said legislature and of said committees, etc.; and concealed from said members and committees the fact of plaintiff's said employment. The new matter in the answer is all denied by the reply. The trial resulted in a verdict and judgment for the plaintiff in the sum of two hundred and eighty-one dollars, from which judgment an appeal is brought to this court.

On the trial in the court below, the evidence on the part of the plaintiff tended to show that about the 8th of December, 1886, it was arranged between plaintiff and defendants that plaintiff should immediately enter the service of the defendants as *a detect-ive* and agent, to keep them advised and informed as to what was going on with respect to rumored hostile action against fish-ing by fish-wheels by various persons interested adversely to the defendants, and that such service was to continue during the ses-sion of the legislature; and that for such service the plaintiff was to receive a reasonable sum, and be re-imbursed all his expenses incurred and paid out by him in the service; that he incurred the expenses set out in the amended complaint, and that his services were reasonably worth two hundred dollars per month. On the part of the defendants, the evidence tended to prove that in December the defendant McLeod heard that plaintiff was engaged to represent the fish-wheel men at the coming session of the legislature, where it was supposed measures antagonistic to fish-wheels were to be pressed, and he wrote to plaintiff inquir-ing of him what was going to be done, and what it would cost

to let "us" (defendants) into the fight. The plaintiff then came to Celilo, and he came a number of times afterward without defendant's solicitation. He wanted money, and talked about his going to Salem when the legislature convened. He said he knew many of the members and had a personal influence with them, and that he could do a great deal to prevent hostile legislation; that he had experience in that class of work, and if necessary, could steal any bill that might be passed; that he had done that in Washington Territory; that he must have money to go on. Witness McLeod told him he could make no contract with him till Mr. Taffe returned from the East; but plaintiff persisted in wanting money, and said he was on his way to Alkali to see some of the members of the legislature whom he knew, and with whom he had personal influence. The defendant then gave him twenty dollars, but did not direct him what to do with it, nor did he say what he would do with it. Subsequently plaintiff again came to Celilo without solicitation and wanted money to go to Salem. Defendant McLeod told him he could make no contract with him because Mr. Taffe was still East. He persisted in wanting money, and defendant McLeod finally gave him seventy dollars more to get rid of him, and told him to work as far as that would go, and when his money gave out he was to stop. Never told him what he was to do for it, nor did plaintiff tell defendant what he would do with it. Never engaged plaintiff to perform any service, nor agreed to re-imburse him in his expenses at Salem or elsewhere, nor agreed that McLeod & Co. should pay him for any service or any expense. Never authorized the incurring or paying any of the items charged in the amended complaint. That in January, 1887, after Mr. Taffe's return from the East, defendants were on their way from the Dalles to Celilo, and found plaintiff on the train. He again wanted money. Mr. Taffe and he were talking about what could be done if a bill were passed; to which plaintiff replied: "Well, I could steal the bill. The clerk of the Senate was elected by me and owes his position to me, and I'd steal the bill."

The evidence of J. H. Taffe, one of the defendants, tended to

prove that he and McLeod saw plaintiff on the train at the Dalles about the 26th of January, 1887. That witness then asked plaintiff what he could do if a bill should be passed injurious to the fish-wheel men. He said he could steal the bill. Witness asked him how. He answered: "Well, I can't exactly tell you how, but the clerk of the Senate owes his position to me, and I could steal it, through him."

At the conclusion of the evidence the defendants' counsel asked the court, among other things, to charge the jury as follows: "That if the contract between the plaintiff and defendant was that plaintiff should attend the session of the legislature, and there to lobby with the members thereof against a bill there pending, antagonistic to the taking of salmon fish by fish-wheels, and by lobby services prevent the passage of such a law, he could not recover thereon."

Defendants' counsel further asked the court to instruct the jury as follows: "That if it was the understanding between the plaintiff and defendants that plaintiff should attend at the session of the legislature, and there privately importune, converse with, and persuade members of the legislature in the interests of the defendants, against any measures pending before the legislature antagonistic to the taking of salmon fish by means of fish-wheels, he cannot recover." Defendants' counsel further asked the court to instruct the jury as follows: "That if it was the understanding between plaintiff and defendants that the plaintiff should attend the session of the legislature, and by exercising, and seeking to exercise, his personal influence with members of the legislature in the interests of the defendants, and by means of such influence, and by then lobbying for the defendants, prevent or aid in preventing any legislation forbidding the taking of salmon fish by means of fish-wheels, he could not recover, nor could he recover for any expenses incurred while engaged in such service."

These instructions, with others asked by the defendants, embracing, in substance, the same legal propositions, were refused by the court, to which an exception was taken. The court, then, of its own motion, gave the jury the following

instruction: "By section 638 of the Criminal Code, it is made a misdemeanor for any person, being an agent of another interested in the passage or defeat of any measure before the legislature, in relation to such measure to converse with and explain, or in any manner attempt to influence any member of the legislature in relation to such measure without first truly and completely disclosing to such member the interest of the person whom he thus represents; and if it was the contract between the plaintiff and defendants that the plaintiff should perform his service without disclosing truly and completely the interests of the defendants, he cannot recover; but on the other hand, the plaintiff had the right to contract with the defendants that the plaintiff should go to the legislature, and after truly and completely disclosing the interests of the defendants, oppose and prevent the passage of any law antagonistic to the defendants' interests by public discussion, argument, or submission of evidence, or by privately and not openly conversing with and importuning individual members, and of its committees in defendants' interests, and by exercising and seeking to exercise a personal influence with them in the defendants' interests; provided, that all the while such member or members had been truly and completely informed by the plaintiff of the interests in behalf of which plaintiff was working, and of his own interest therein; and the plaintiff can recover for such services, if he was retained to perform the same, and for all expenses alleged in the complaint, if they were incurred and paid out by him, if the plaintiff (defendants) promised to re-imburse his expenses, except that the plaintiff cannot recover for the items of fifteen dollars alleged to have been expended for cigars in entertaining members of the legislature while he was engaged in such service."

The first question demanding our attention is the refusal of the court to give the instructions asked by appellant. These instructions all, in effect, assert the same principle, though somewhat varied in form, and we think they contain a correct statement of the law applicable to the particular facts before the jury, and that it was error to refuse them. It is against public policy for any person to hire himself out to perform lobby services for

another, and all contracts made or other acts done in furtherance of such purpose are illegal, and furnish no cause of action whatever for or against any one. In *Powers* v. *Skinner*, 34 Vt. 274, the principle is thus stated: "It has been settled by a series of decisions, uniform in their reason, spirit, and tendency, that an agreement in respect to services of a lobby agent, or for the sale by an individual of his personal influence and solicitations to procure the passage of a public or private law by the legislature, is void, as being prejudicial to sound legislation, manifestly injurious to the interests of the State, and in express and unquestionable contravention of public policy." (*Clippinger* v. *Hepbaugh*, 5 Watts & S. 315; *Woods* v. *McCann*, 6 Dana, 366; *Marshall* v. *Baltimore & Ohio R. R. Co.* 16 How. 314; *Harris* v. *Roofs*, 10 Barb. 489; *Rose* v. *Truax*, 21 Barb. 361; *Bryan* v. *Reynolds*, 5 Wis. 200.) "The principle of these decisions has no relation to the equities between the parties, but is controlled solely by the tendency of the contract; and it matters not that nothing improper was done, or expected to be done under it. The law will not concede to any man, however honest he may be, the privilege of making a contract, which it would not recognize when made by designing and corrupt men. A person may without doubt be employed to conduct an application to the legislature as well as to conduct a suit at law, and may contract for and receive pay for his services in preparing and presenting a petition, or other documents, in collecting evidence, in making a statement or exposition of facts, or in preparing or making an oral or written argument; provided all these are used, or designed to be used, either before the *legislature itself*, or some committee thereof *as a body;* but he cannot with propriety be employed to exert his personal influence, whether it be great or little, *with individual members, or to labor privately in any form with them out of the legislative halls* in favor of or against any fact or subject of legislation."

In *Clippinger* v. *Hepbaugh*, *supra*, it is said: "It matters not that nothing improper was done or expected to be done by the plaintiff. It is enough that such is the tendency of the contract that it is contrary to sound morality and public policy, leading

XV. OR.—22.

necessarily, in the hands of designing and corrupt men, to the use of an extraneous, secret influence over an important branch of the government. It may not corrupt all; but if it corrupts or tends to corrupt some, or if it deceives or tends to deceive some, that is sufficient to stamp its character with the seal of disapprobation before a judicial tribunal." And to the like effect is *Brown* v. *Brown*, 34 Barb. 533; *Cook* v. *Shipman*, 24 Ill. 614; *Mills* v. *Mills*, 10 N. Y. 543; *Trist* v. *Child*, 21 Wall. 441; *Woods* v. *McCann*, 6 Dana, 366; *Frost* v. *Inhabitants of Belmont*, 6 Allen, 152; *Harris* v. *Simonson*, 28 Hun, 318; *Usher* v. *McBratney*, 3 Dill. 385, n.; *Tool Co.* v. *Norris*, 2 Wall. 45; *McBratney* v. *Chandler*, 22 Kan. 692. The last case cited states the rule thus: "The contract of an attorney for services as such, whether the services are to be rendered before a court, a department of the government, or a legislative body, is valid, and upon performance of the service a recovery can be had. The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy and void. When there is a single contract, and the services contracted for and rendered are partially those of an attorney, and partially those of a lobbyist, and blended together as part and parcel of a single employment, the entire contract is vitiated. That which is bad destroys that which is good and they perish together."

*Construing section* 638. Nor can we give our assent to the application which the learned circuit judge made of section 638 of the Criminal Code. That section provides: "If any person, having any interest in the passage or defeat of any measure before, or which shall come before, either house of the legislative assembly of this State, or if any person being the agent of another so interested shall converse with, explain to, or in any manner attempt to influence any member of such assembly in relation to such measure, without first truly and completely dis-closing to such member his interest therein, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than three months, nor more than one year, or by fine not less than fifty dollars, nor more than five hundred dollars."

This section ought not to be so construed as to render any contracts valid which would have been void if it had not been enacted. Such was not its purpose. It does not render contracts valid, made to secure lobby services, if they were made under such circumstances that the lobbyist could not be punished criminally. This would be extending the effect of this enactment very much beyond what we conceive to have been its object. It sole purpose was to make lobbying under certain conditions *criminal*, but not to make the employment of the lobbyist, even under the particular circumstances enumerated in the section, one that should receive the encouragement of the law. The instruction given by the court below is not in harmony with this construction, and was therefore erroneous. Such contracts as the one sued on are always closely and rigidly scrutinized by the courts when sought to be enforced. Nothing wrong may have been intended in this particular case, nor was it necessary. If the terms of the contract required any services to be rendered, or if the party employed in furtherance of the general purposes of his employment rendered or designed to render any services, either to cause or to prevent any legislative action otherwise than by publicly presenting the subject before the legislature or some of its committees, such contract cannot be enforced in this State.

It follows from the views expressed that the judgment of the court below must be reversed and a new trial awarded.