JOHN HUGHES, EXECUTOR, ET AL., APPELLEES, V. SARPY
COUNTY, APPELLANT.

FILED OCTOBER 30, 1914. No. 17,886.

1. **Arbitration and Award.** Submissions of controversies to arbitration are to be liberally construed so as to give effect to the intention of the parties. It is the policy of the law to encourage the settlement of disputes without litigation, and awards are favored in law.

2. ————: IMPEACHMENT OF AWARD: BURDEN OF PROOF. An award, when regularly made and published, is *prima facie* binding upon the parties thereto, and the burden of alleging and proving the contrary is upon the party seeking to impeach it.

3. **Counties:** ARBITRATION. County boards are vested with authority to submit matters in dispute to arbitration either under the provisions of the statute or the principles of the common law.

4. **Arbitration:** AWARD: CONCLUSIVENESS. In a common law submission an award was agreed upon by the arbitrators. It was written out, signed, inclosed in a sealed envelope, and given to one of the arbitrators for delivery. He failed to deliver it, but produced it in court upon an order being made to that effect. *Held,* That the intention at the time the award was signed was that it should be final, that it was not thereafter revocable, by either party alone, and that the mere failure to deliver it did not operate to set it aside.

5. ————: NOTICE. Where the evidence discloses that no hearing was contemplated, but that it was the intention of the parties that the arbitrators should meet at the proposed location of a road, view the premises, and award damages, and the arbitrators met in this manner upon a day fixed by one party, the other consenting thereto, the award is not void for want of notice of the time and place of the meeting of the arbitrators.

APPEAL from the district court for Sarpy county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*E. S. Nickerson* and *A. E. Langdon,* for appellant.

*John W. Parish* and *Edward M. Martin,* contra.

LETTON, J.

Proceedings were taken by the county authorities of Sarpy county to locate and open a road along the west line of a certain tract of land belonging to one Barney Hughes. A claim for damages was filed by him in the sum of $2,500. Appraisers were duly appointed who awarded him damages in the sum of $211. This was reduced to $121.25 at the hearing before the board of county commissioners. Hughes died, and an appeal was taken to the district court by his successors in interest.

While the proceedings on appeal were pending in the district court one of the plaintiffs had a conversation with one of the county commissioners with respect to submitting the question as to the amount of damages to arbitration. Afterwards the board of county commissioners passed the following resolution: "Francis Fricke is appointed arbitrator for Sarpy county in the matter of the damages on the Barney Hughes place by reason of the location of the public road on the west side thereof." Afterwards John Hughes, as executor, and representing the other heirs, selected one Stickley as arbitrator for defendants. Fricke and Stickley met, made an examination of the land and of the Osage orange hedge and fences along the line, and wrote out and signed the following document:.

"We, the arbitrators appointed to place a valuation on hedge and wire fence on Hughes' property, place value as follows: Hedge, $900. Building fence on same 40 a., $75. Removing old fence and building new fence on next 40 a. north, $95. Next 40 a. north same, $95 if desired.

"J. F. Stickley, Arbitrator for Hughes.

"Francis Fricke, Arbitrator for County."

This paper was then placed in an envelope addressed to the county commissioners of Sarpy county and given to Fricke to file with the commissioners. He did not do so, but kept it in his possession until ordered to produce it by the court at the trial. The petition pleads these facts, and also pleads that the value of the Osage orange hedge was $1,000, and that the land actually taken was worth $1,500.

The answer is a general denial. At the trial plaintiffs waived any rights to damages by virtue of the taking of the land, and admitted that the findings of the arbitrators for $1,070 is in full of all damages claimed by plaintiff against the county of Sarpy. At the close of the testimony the plaintiff moved for a directed verdict, which motion was sustained, and the jury were directed to return a verdict for $1,070, the amount of the award. The county of Sarpy has appealed.

The usual assignments of error are made, and, in addition, that the court erred in receiving the alleged award, and in striking out the evidence of certain of defendant's witnesses who testified with respect to the value of the land before and its value after the opening of the road. The principal question involved is as to the weight to be given to the alleged award. The district court evidently treated the amount fixed in the award as a final determination of the value of the hedge, and, construing this in connection with the waiver by the plaintiff of all damages for the taking of the land, held it to be a final adjudication of the matters in controversy and as fixing the total damage at $1.070, the amount of the award. Whether this was correct depends upon the weight to be given to the finding of Fricke and Stickley as an award. It is clear that what was done did not constitute a binding arbitration under the provisions of the statute. Rev. St. 1913, secs. 8218-8235. The submission was not in writing, it was not acknowledged, nor was it made by order of court in a pending suit. None of the essential elements to an arbitration under the code appear in the record. Was this award final and binding under the common law?

In *Greer v. Canfield,* 38 Neb. 169, the facts were that by an oral agreement a certain dispute was left to be settled by arbitrators. The testimony as to the form of the submission was indefinite, but one of the arbitrators said he understood that they were to decide all matters of difference between the parties. The arbitrators considered the statements of the parties with reference to each item, and as to some of them heard evidence and arrived at a conclu-

sion, though no oath was administered to any witness. The validity of the award was attacked, but this was held to be a good common-law arbitration. "This is a common-law award, and a submission made by either party, either by word or deed, is sufficient. If the submission is by word, there is no remedy to recover on the award except by action; but the award, if fairly made within the scope of the matters submitted, will be valid and binding. *Tynan v. Tate,* 3 Neb. 388." In the absence of fraud or mistake an award, whether at common law or under the statute, when regularly made and published, is *prima facie* binding upon the parties thereto, and the burden of alleging and proving the contrary is upon the party seeking to impeach it. The right to revoke a common-law submission must be exercised before the making and publication of the award. *Bentley v. Davis,* 21 Neb. 685; *Fox, Canfield & Co. v. Graves,* 46 Neb. 812; *Connecticut Fire Ins. Co. v. O'Fallon,* 49 Neb. 740. We conclude that there is no evidence to show any invalidity in the arbitration and award.

It is contended that a county through its board of commissioners cannot become a party to an arbitration. While the matters involved in this controversy were not submitted under the statute, we are of opinion that sections 8218, 8219, Rev. St. 1913, with reference to statutory submissions, settle the question of power in the board to enter into either form of arbitration. Section 8218 provides: "All controversies, which might be the subject of civil actions, may be submitted to the decision of one or more arbitrators as hereinafter provided." Section 8219: "The parties themselves, or those persons who might lawfully have controlled a civil action in their behalf, for the same subject matter," may proceed as directed. We think it was not the intention to limit the power to arbitrate to any narrower limits than the power to bring an action, and that the county board is vested with this authority under these provisions and the general statutory provisions granting a county the power to sue and to be sued and making the county board the managing agents for county affairs.

It is contended that, since Fricke refused to produce the award voluntarily, it was not complete, and that it was a mere report back to the county commissioners for their consideration. We are convinced that the intention at the time the award was signed was that it should be final. It was not thereafter revocable by either party. *Connecticut Fire Ins. Co. v. O'Fallon,* 49 Neb. 740. The mere failure of Fricke to deliver it to the county commissioners before the trial could not operate to set it aside.

It is also complained that there was no notice of the time and place for hearing served on the county commissioners. As a matter of fact there was no hearing. The proof is that one of the commissioners called upon Fricke after the meeting, gave him instructions, and told him the arbitrators would meet on a certain day and go over this hedge and land and award damages. The arbitrators proceeded to the locality where the proposed road had been established, examined the hedge, and fixed their own estimate as to damages. This seems to have been the intention of the parties as to the manner of proceeding, and no notice seems to have been contemplated or to be necessary. It is an elementary rule that submissions of controversies are to be liberally construed so as to give effect to the intentions of the parties. It is the policy of the law to encourage the settlement of disputes without litigation, and where no fraud or undue means are shown awards made are favored in law.

It is also claimed that the valuation of the hedge and the judgment are excessive. Osage orange timber is very durable and is peculiarly valuable for use as fence posts. There is evidence that about 1,200 posts were cut from the hedge, most of which were sold by the road supervisor. While we are inclined to think that the damages awarded on account of the hedge were too high, all damages for taking of the land, being afterwards waived, had the same effect as a remittitur, for it is clear that plaintiffs were entitled to from $300 to $350 for the value of the land actually taken. Viewed in this light, we think the award

should be upheld.    While the proceedings at the trial were somewhat irregular, we find no prejudicial error.

The judgment of the district court is

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.