Argued June 25, affirmed July 28, 1925.

# OSWALD WEST v. COOS COUNTY.

(237 Pac. 961.)

**Counties—County, Contracting for Plaintiff's Services, to be Rendered in Securing Money from Federal Government, Held "Transacting County Business," and Suable for Breach Thereof Without Its Consent.**

1. Where county contracted with plaintiff for services, to be rendered to county in attempting to secure from United States a large sum of money equitably due the county, it was transacting county business in its proprietary capacity within Section 937, Or. L., and not acting as an agent of the state, and hence was suable without its consent under Sections 358, 3191, Or. L.

**Arbitration and Award—Municipal Corporation has Power to Submit to Appraisement or Arbitration Disputes as to Matters Relative to Which It has Power to Contract.**

2. A municipal corporation, as to those matters with respect to which it has power to contract, has a further power to submit to appraisement or arbitration potential and existing disputes thereunder.

**Counties—Stipulation in Contract Providing for Fixing of Plaintiff's Compensation by County Judges After Rendition of Services Held not Invalid as Delegation of Power to Such Judges.**

3. Where county employed plaintiff to render services for county in an attempt to secure sums of money equitably due it from the United States, a stipulation therein that plaintiff's compensation was to be fixed by county judges after the rendition of the services was not invalid as a delegation of power to such judges, but being simply a contract providing for an appraisal of the amount to be paid plaintiff, and judges' conclusion, in absence of fraud or mistake, was binding upon parties.

---

1. Liability of counties, mode of enforcement, and power of legislature to modify or impair, see note in 68 Am. Dec. 291. See, also, 7 R. C. L. 966.

2. Right of municipality to submit to arbitration, see note in 18 Ann. Cas. 1030.

Contracts—Contract for Services, to be Rendered in Securing Money
    from United States, Held not Void as a Lobbying Contract.

4.  Contract between plaintiff and defendant county, whereby
plaintiff was to render personal services in attempting to secure
a sum of money from the United States equitably due the county
*held* not void as a lobbying contract and against public policy, it
not appearing that plaintiff was employed to assert his personal
influence with individual members of Congress, or to labor privately
with them at any time or place, or that contract contemplated
plaintiff should influence members of Congress in the discharge of
their duties, but on the contrary it was shown all proceedings were
above board and for the purpose of protecting the county's inter-
ests in a legal manner.

Counties—Action at Law may be Brought Against County Under
    Contract, Where Question of Fact as Well as of Law is Involved.

5.  An ordinary action at law may be brought against a county
to recover an amount of money due under a contract to render
personal services, where a question of fact as well as of law is
presented, and plaintiff need not be confined to the writ of review.

See (1) 15 **C. J.** 664.    (2) 28 **Cyc.** 1753.    (3) 15 **C. J.** 554.    (4)
13 **C. J.** 431.    (5) 15 **C. J.** 664.

From Lane: H. H. BELT, Judge.

Department 1.

This is an action brought by plaintiff, Oswald
West, against Coos County to recover the sum of
$19,685.66 on an express contract, praying that
amount for services rendered in representing Coos
County in regard to a certain bill pending before
Congress. The bill provided for the acceptance by
the United States from the Southern Oregon Com-
pany of a deed of reconveyance of lands granted to
the State of Oregon by an act commonly known as
the "Coos Bay Wagon Road Land Grant" and which
provided for the payment by the United States to
Coos County of all taxes, costs, interests and penal-
ties thereon. The cause was tried before the court
and a jury, and a verdict rendered in favor of plain-
tiff. Defendant appeals from the judgment entered
thereon.

---

4.  Contracts for procurement of legislation, see notes in 6 **Ann.**
**Cas.** 220; 16 **Ann. Cas.** 850.

The counties of Douglas and Coos were both interested in the settlement of the litigation existing between the United States and the Southern Oregon Company concerning the grant of lands, as the taxes upon the granted lands were in default. It was thought that the pending legislation before Congress, because the country was then engaged in war, was not receiving that consideration that was demanded by the interests of the two counties. This matter was discussed between the plaintiff and the county judges of the two counties and a determination arrived at as to the nature of the employment of Mr. West and the manner in which his compensation was ultimately to be determined. This was done at Roseburg, Douglas County, March, 1918. Afterward the decision reached at this meeting was incorporated into a formal contract between Coos County and Mr. West, which is expressed in a resolution and order of the County Court of Coos County dated April 3, 1918. The resolution, after referring to the bill in Congress, recites that Coos County has involved the sum of $400,000 in taxes, penalties and interest and that it was deemed wise and expedient that a qualified competent person should be appointed to protect the interests of Coos County and then reads as follows:

"Now, THEREFORE, BE IT RESOLVED, that Oswald West be and he is hereby employed to represent and protect the interest of Coos County in the matter pending before Congress in the settlement of the suit of the Southern Oregon Company against the United States."

The order of the County Court entered on the same day formally adopted the tentative agreement between West and the county judges, in the following language:

"It appearing to the court that it is agreed that the compensation for such services shall in the settlement thereof be left to the judgment of the county judge of Douglas County and the county judge of Coos County to be decided upon when such service is ended and the matters herein settled; * * IT IS THEREFORE ORDERED that the agreement entered into by and between the county judge of Douglas County, the county judge of Coos County, and Oswald West, be and the same is hereby confirmed."

On February 26, 1919, Congress enacted a law which provided for the payment to Coos County of all taxes with costs, interests and penalties thereon on the lands to be acquired by the United States from the Southern Oregon Company in Coos County and the further payment of 25 per cent of the proceeds of the sales of lands and timber from the granted lands lying within Coos County, as a result of which the United States has paid Coos County the sum of $492,141.68.

Before the passage of the bill, Mr. West proceeded to Washington, D. C., and appeared as attorney for the County of Coos before the Committee on Public Lands, and gathered and presented data and maps, and made argument in regard to the interests of the county as to the delinquent taxes and in a legal way assisted in furthering the interests of the county in the passage of the measure. He made several trips from Oregon to Washington, D. C., in connection with the matter. After the bill became a law, at the request of Mr. West, the county judge of Coos County conferred with the county judge of Douglas County and agreed with him upon the compensation to be paid Mr. West at 4 per cent of the amount recovered by the county for taxes, to wit, the sum of $19,585.66,

for which the jury rendered a verdict in plaintiff's favor.

About March 13, 1920, plaintiff presented to the County Court of Coos County his written itemized statement of his claim against the county for the services rendered pursuant to the contract and the County Court upon consideration of said claim, by its order bearing date of May 4, 1920, refused to allow the claim except for the sum of $1,000, which warrant was ordered drawn in favor of plaintiff, and which plaintiff refused to accept.

The facts, as heretofore stated, were substantially set forth in plaintiff's complaint, to which the defendant filed a demurrer upon the grounds that the court has no jurisdiction of such action and that the complaint does not state facts sufficient to constitute a cause of action. The defendant by its answer, and in its brief, alleges and contends that the determination of the compensation to be paid plaintiff by the county judges of Douglas and Coos Counties, after the services were rendered, pursuant to the agreement between plaintiff and the County Court of Coos County and the employment of plaintiff in the manner and form as alleged in plaintiff's complaint, was not within the power and legal capacity of the county, and that all of the attempts of the defendant to employ plaintiff to render the services were *ultra vires,* illegal and void. It was also alleged that the contract and services were illegal and contrary to public policy; that they were lobbying services and it was a lobbying contract.

Defendant alleges that on June 3, 1919, an election was held in Coos County in which James Watson was recalled as county judge of Coos County, and C. R. Wade was elected as county judge in his stead; that

the plaintiff and said James Watson knew the result of said election at the time that R. W. Marsters, county judge of Douglas County, and James Watson, county judge of Coos County, fixed and agreed upon the amount and compensation of the plaintiff and that said James Watson was without authority to act in the matter. Plaintiff filed a reply putting in issue most of the new matter of the answer. AFFIRMED.

For appellant there was a brief over the names of *Mr. Ben S. Fisher* and *Messrs. Goss & Murphy,* with an oral argument by *Mr. Herbert S. Murphy.*

For respondent there was a brief over the names of *Messrs. Dey, Hampson & Nelson* and *Mr. C. A. Hardy,* with oral arguments by *Mr. Charles A. Hardy* and *Mr. Alfred A. Hampson.*

BEAN, J.—1. The defendant urges as the most important question raised upon this appeal that the County Court had no legal authority to execute the contract involved herein for the reason that it was stipulated that the compensation for the services to be rendered by the attorney for the defendant county, after the services were performed, should be left to the county judge of Douglas County and the county judge of Coos County, to fix the amount.

A county has a dual character: (1) it is a governmental agency of its principal, the state, and as such agent it has strictly limited powers. (2) It is a body corporate with power to contract, including the power to contract for the employment of an attorney, and as such is suable without its consent in contradistinction to the state: Or. L., §§ 358, 3191; *Pruden* v. *Grant County,* 12 Or. 308, 310 (7 Pac. 308); *Grant County* v. *Lake County,* 17 Or. 453, 463 (21 Pac. 447); *Taylor*

v. *Umatilla County,* 6 Or. 394; *State ex rel.* v. *Hall,* 37 Or. 479 (63 Pac. 13).

In the adjustment or settlement of taxes a County Court, sitting for the transaction of county business, acts not in a judicial capacity, but as the fiscal and managing agent of the county, precisely as an agent of a private corporation might: *Multnomah County* v. *Title Guarantee Co.,* 46 Or. 523 (80 Pac. 409). Section 937, Or. L., provides that the County Court has the authority and powers pertaining to county commissioners to transact county business, and defines "county business"; subdivision 9 being applicable to this case:

"(9) To have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide."

In 15 C. J., Section 238, page 545, it is stated that county boards cannot

"delegate to agents or servants employed by them the performance of official duties calling for an exercise of discretion on the part of the board."

The general rule is laid down in 28 Cyc. 1753, as follows:

"The power to contract and to sue and to be sued implies municipal power to submit to abitration. And a statute providing arbitration by all 'persons' includes municipal corporations."

In Dillon on Municipal Corporations (5 ed.), Section 822, page 1240, we read:

"As a general proposition, municipal corporations have, unless especially restricted, the same powers to liquidate claims and indebtedness that natural persons have, and from that source proceeds *power to adjust all disputed claims,* and when the amount is ascertained, to pay the same as other indebtedness. It would seem to follow therefrom that a municipal corporation, unless disabled by positive law, *could*

*submit to arbitration* all unsettled claims with the same liability to perform the award as would rest upon a natural person, provided, of course, that such power be exercised by ordinance or resolution of the corporate authorities.''

In *Hughes* v. *Sarpy County,* 97 Neb. 90, 93 (149 N. W. 309), the court said:

''It is contended that a county through its board of Commissioners cannot become a party to an arbitration * * We think it was not the intention to limit the power to arbitrate to any narrower limits than the power to bring an action, and that the county board is vested with this authority under these provisions and the general statutory provisions granting a county the power to sue and to be sued and making the county board the managing agents for county affairs.''

In the negotiations of Coos County with the plaintiff, the county was acting in its corporate or proprietary character as a principal, employing the plaintiff to render services for it in an attempt to secure from the United States a large sum of money which was equitably due the county as taxes upon certain lands. It was not acting as an agent of the state in the transaction.

2. A municipal corporation, as to those · matters with respect to which it has the power to contract, has a further power to submit to appraisement resulting potential disputes and to arbitration resulting existing disputes: 28 Cyc. 1753; 2 R. C. L. 357; 2 Dillon on Mun. Corp. (5 ed.), § 822; *Manerud* v. *Eugene,* 62 Or. 196 (124 Pac. 662); *Sweeney* v. *Jackson County,* 93 Or. 96, 115 (178 Pac. 365, 182 Pac. 380); *Johnson* v. *Prineville,* 100 Or. 105, 117 (196 Pac. 817); *Simrall* v. *City of Covington* (Ky.), 29 S. W. 880; *Hughes* v. *Sarpy County,* 97 Neb. 90, 93 (149 N. W. 309); *Remington* v. *Harrison County,* 75 Ky.

(12 Bush) 148, 152; *District Township of Walnut* v. *Rankin,* 70 Iowa, 66, 67 (29 N. W. 806).

3. The order of the County Court clearly shows that the County Court employed the plaintiff, and shows the nature and extent· of such employment, namely, to represent and protect the interest of Coos County in the matter pending before Congress. Under this contract the plaintiff would have been entitled to a reasonable compensation for his services after the same were rendered. It was not apparent then what the reasonable amount would be. Therefore, the County Court and Attorney West stipulated that the amount of the compensation should be settled by the county judges of the two interested counties after the services had been rendered. In making this stipulation the County Court of Coos County was not delegating a power to the two judges. The County Court of Coos County did not, at any time, possess the power to fix the reasonable amount of compensation to be paid the plaintiff. That was a matter of agreement or contract, which takes at least two to make. The agreement that the compensation should be fixed by the two county judges was merely a stipulation as to a certain kind of evidence upon that point, all the other features of the contract having been agreed to between the contracting parties. It was not a stipulation, strictly speaking, to submit a future dispute. Whatever difference there may be as to agreements to submit future disputes, the authorities are practically unanimous that an agreement which merely makes a condition precedent to the bringing of a suit is valid. It was perfectly competent for the county to stipulate for the determination of the matter of compensation which did not go to the root of the question, or involve the question of

115 Or.—27

liability itself. The County Court had already agreed as to the employment and the payment therefor on the determination of the two county judges of what was the reasonable value of the work done: 2 R. C. L. 361, § 11. Arbitrators and appraisers should act impartially and without bias. Some of the rules of law that apply to arbitrators apply in the same manner to appraisers. While the terms "appraisement" and "arbitration" are sometimes used interchangeably, there is a plain distinction between them. In the proper sense of the term, the latter presupposes a controversy or difference to be tried and decided in a *quasi*-judicial manner. An appraisal is the proper term to be applied when an appraisement or valuation is to be made as auxiliary or incident to a contract. Appraisers are selected to prevent, by appraisal, the arising of differences and not to settle disputes which have already arisen. Under the agreement pursuant to which they are appointed unless provided otherwise, appraisers are generally expected to act upon their own knowledge and investigation, without notice of hearings. They are not required to hear evidence or receive the statements of the parties. They are allowed a wide discretion as to the mode of procedure and sources of information. In the absence of fraud or mistake, their conclusion will be binding upon the parties: *Sebree* v. *Board of Education,* 254 Ill. 438, 446 (98 N. E. 931); 1 Mechem on Sales, § 212, and note; *Norton* v. *Gale,* 95 Ill. 533 (35 Am. Rep. 173); Morse on Arbitration and Award, .38; Russell on Award (7 ed.), 42; *Noble* v. *Grandin,* 125 Mich. 383 (84 N. W. 465); *Palmer* v. *Clark,* 106 Mass. 373; *Omaha Water Co.* v. *City of Omaha,* 162 Fed. 225 (15 Ann. Cas. 498, and note, 89 C. C. A. 205).

This is not a case where the County Court charged with the duty of entering into a contract delegated the performance of that duty to one of its members or to an outsider, but is a contract simply providing that the amount to be paid plaintiff for his services as attorney for the county should after the rendition of the services be determined by the two judges who were familiar with the circumstances of the case. It precluded the possibility of an action at law to determine such amount.

The defendant does not contest the findings of the two county judges fixing the compensation as fraudulent or as grossly erroneous. In the absence of any allegation or proof that the amount determined by the two county judges was not a reasonable amount or was fraudulent or erroneous, the finding is valid and should be upheld.

The defendant criticises the manner in which the two county judges arrived at the amount of compensation, for the reason that they did not give the matter sufficient investigation, but it nowhere appears that the two county judges were not familiar with all the facts and circumstances pertaining to the matter. James Watson was at the time the duly qualified and acting county judge of Coos County. The fact of a change in the personnel of the County Court did not alter the legal phase of the matter.

Defendant asserts that the contract involved is a lobbying contract and void as against public policy. In Elliott on Contracts, volume 2, page 328, we find:

"A contract which has for its object the influencing of a member or members of a legislative body in the discharge of their public duties is void as against public policy."

4. The rule is well stated by Mr. Justice STRAHAN in *Sweeney* v. *McLeod,* 15 Or. 330, at pages 337, 338 (15 Pac. 275, 279):

"A person may without doubt be employed to conduct an application to the legislature as well as to conduct a suit at law, and may contract for and receive pay for his services in preparing and presenting a petition or other documents, in collecting evidence, in making a statement or exposition of facts, or in preparing or making an oral or written argument; provided all these are used, or designed to be used, either before the *legislature itself* or some committee thereof *as a body;* but he cannot with propriety be employed to exert his personal influence, whether it be great or little, *with individual members, or to labor privately in any form with them out of the legislative halls* in favor of or against any fact or subject of legislation. * * The contract of an attorney for services as such, whether the services are to be rendered before a court, a department of the government, or a legislative body, is valid, and upon performance of the service a recovery can be had. The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy and void. When there is a single contract, and the services contracted for and rendered are partially those of an attorney, and partially those of a lobbyist, and blended together as part and parcel of a single employment, the entire contract is vitiated. That which is bad destroys that which is good and they perish together.'"

If the contract in evidence was intended to militate against public policy or is illegal as providing for an unlawful conduct on the part of plaintiff, it would be the duty of the court to refrain from enforcing it, although the County Court has, as far as it can legally do so, ratified the contract by offering and tendering plaintiff $1,000 in payment for his services.

It nowhere appears that the plaintiff was employed to exert his personal influence with individual members of Congress or its committee, or to labor privately with them at any time or place; or that the contract contemplated that plaintiff should influence members of Congress in the discharge of their public duties. In all that was done or intended to be done, the proceedings were open and aboveboard and for the purpose of furthering and protecting the interests of Coos County in a legal manner in the collection of taxes which were justly due the county, but had not been paid for the reason that the Congress had not acted in the matter and the law did not provide a means of settlement of the county's claim. There had been a similar bill passed by the Congress in relation to the Oregon and California Land Grant, and it seems the main thing to be accomplished was to get the public land committee to act and report so that Congress would pass upon the measure.

Plaintiff, ex-Governor West, first applied for and was granted by the Congressional Committee time to procure and submit data pertaining to the claim of the county. This was done. He appeared as attorney for the two counties before the committee and presented and urged the claims of the county in an honest and legal manner pursuant to the contract which was not a lobbying contract in any sense of the word. It was wholly immaterial that plaintiff was not mentioned as "attorney at law" in the contract with the County Court. It was contemplated that he act as attorney for the county in the matter as he did.

In *Herrick* v. *Barzee,* 96 Or. 357 (190 Pac. 141), at page 361 of the Report, this court said:

"The rule of law appears to be that any person whose interests may be in any way affected by any public or private act of a legislative body has an undoubted right to present and urge his claims by arguments, either in person or by counsel professing to act for him, before legislative committees. A contract for services to be rendered by an attorney before the legislature or the Congress of the United States, in securing the passage of a law providing for the payment of a just claim, is not unlawful if it does not contemplate the use of improper means and if the services to be rendered are such as appeal to the reason of those whom it is sought to persuade."

The present case comes within the ruling quoted in the Herrick-Barzee case. The contract in the instant case does not come within the doubtful class as mentioned by Mr. Justice BURNETT in his dissenting opinion in *Herrick* v. *Barzee,* at page 385, in stating the important elements in determining whether acts of an attorney are legal.

"1st. Was his action open and public—as before Congress or a committee—or was it in the nature of a private and secret solicitation of the individual congressman?

"2d. Was he acting for a contingent fee?

"3d. Did he attempt to organize a pressure to be brought to bear upon members of the legislative body?

"If any of these exist, it puts the contract in the doubtful class. If all concur, it is conclusive against the legality of the transaction." See *Galveston County* v. *Gresham* (Tex. Civ. App.), 220 S. W. 560.

5. Defendant submits that plaintiff's only remedy was by writ of review. A writ of review in the case at bar would not afford an appropriate remedy. There were issues of fact raised by the pleadings, which must necessarily be tried before a proper determination of the case could be made. Wherever

a question of fact as well as of law is presented, resort may be had to an action at law against a county: *Coos Bay Times Pub. Co.* v. *Coos County,* 81 Or. 626 (160 Pac. 532). In that case an action was brought for the recovery of an amount, which the plaintiff claimed was owing to it by the county by reason of a contract to pay the plaintiff for printing at the rate of five cents per line. This claim had been rejected in part by the County Court. Upon appeal to this court it was held that there was no merit in the contention that the remedy of an action at law was not open to plaintiff. It was held that the remedy pursued by plaintiff was proper. See, also, *Creason* v. *Douglas County,* 86 Or. 159 (167 Pac. 796). In the instant case the amount sought to be recovered by plaintiff is fixed in a definite sum by the appraisement made under the contract. Upon a definite sum being determined by that appraisement no discretion remained in the County Court to pay any sum other than the liquidated amount determined by such appraisement. The law fixes upon the county the duty to pay the amount determined by the appraisement in the absence of any fraud or mistake.

The counsel for defendant, in a very carefully prepared brief evidencing much research, cites many authorities with which no one can have any quarrel. We are, however, unable to apply many of the authorities there cited to the facts of this case.

Finding no error in the record the judgment of the Circuit Court is affirmed.            AFFIRMED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.