

# THE ATTORNEY GENERAL

## OF TEXAS

Grover Sellers

~~JOHN BEN SHEPPERD~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Mr. Charles H. Theobald
County Attorney
Galveston County
Galveston, Texas

Dear Mr. Theobald:

Opinion No. O-7202

Re: Authority of Galveston County
to employ a representative to ap-
pear before congressional committees
for Federal aid for Galveston County
proposed improvements.

Your letter of April 3, 1946, addressed to Attorney
General, Grover Sellers, requesting an opinion of this depart-
ment relative to subject has been referred to the writer for
reply. You submitted a memorandum with your request, a por-
tion of which is quoted as follows:

". . .

"Will you please advise the answer to the follow-
ing questions?

"1. Whether the Commissioners Court of Galveston
County is authorized to employ a representative in
Washington to represent the county's interests before
Federal Agencies in connection with one or all of the
following projects:

a. Securing for Galveston County a seawall ex-
tension.

b. Securing Federal aid for the Texas City pro-
tective works.

c. Securing Federal aid for a new courthouse and
jail for Galveston County.

"2. Whether the Commissioners Court of Galveston
County is authorized to employ the representative in
Washington at an annual salary to represent the County
of Galveston before various Federal agencies in connec-
tion with general legitimate projects of said county
without limiting the employment to projects that are
now specifically known.

"The representative, if employed, will appear be-
fore Congress or congressional committees and before

various Federal Agencies and will openly and publicly represent the County of Galveston in the presentation of data and information in connection with various projects of the County of Galveston. The said representative will not attempt to exercise his personal influence but only present before the various agencies in their official capacities the facts upon which the County of Galveston relies in attempting to obtain Federal Aid in connection with various projects. It is contemplated that the said representative will also be employed for the same purposes insofar as the interests of the City of Galveston are concerned, and a portion of his expenses will be paid by the City of Galveston Chamber of Commerce."

Article 5, Section 18 of the Constitution of the State of Texas provides in part as follows:

". . . .

"The County Commissioners so chosen, with the County Judge, as presiding officer, shall compose the County Commissioners' Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

In answering your first question, we believe that it is necessary to first determine whether the projects listed in a, b, and c, above, constitute "county business" as that term is used in the above quotation from the Constitution of Texas. In the case of Glenn v. Dallas County, Bois D'Arc Island Levy District 275 S.W. 137, it was held that under the Constitution providing that County Commissioners' Courts shall exercise such power and jurisdiction over all county business as is conferred by the Constitution and laws of the State "county business" should be given broad and liberal construction so as to extend powers to any and all business of the county, and any other business of the county connected with or interrelated with business of any other county properly within jurisdiction of such courts under the Constitution and law.

In the case of Galveston County vs. Gresham, 220 S.W. 560, it was held that the construction of a seawall within the limits of a city for the protection of the lives and property of the inhabitants of the county is "county business" within the jurisdiction of the Commissioners' Court, under the provisions of Vernon's Annotated State Constitution, Art. 11, Sec. 7, Art. 5 Sec. 18 and Vernon's Annotated Civil Statutes, Art. 5585, and Art. 6830.

In the case of West vs. Coos County, 237 Pacific 961, 115 Ore. 409, it was held that where a county contracted with plaintiff for services to be rendered to the county in attempting to secure from the United States a large sum of money, equitably due the county, it was transacting "county business."

The following cases have held that the building of a county courthouse is "county business," within the meaning of the Constitution. Kraus vs. Lehman, 83 N.E. 714, 170 Ind. 408; Macy v. Board of Commissioners of Miama County, 83 N.E. 718, 170 Ind. 707; Board of Commissioners of Newton County v. State Ex Rel Bringham, 69 N.E. 442, 161 Ind. 616.

It is therefore the opinion of this department that the projects mentioned in your memorandum constitute "county business" as that term is used in Art. 5, Sec. 18 of the Constitution of Texas, and hence would be legal and legitimate projects for the Commissioners' Court of Galveston County to undertake.

Having determined that these projects constitute county business, we will now pass to the proposition of whether or not Galveston County has the authority to employ a representative in Washington to represent its interests before Federal agencies in connection with such projects.

In the case of Gibson vs. Davis (Civ.App.) 236 S.W. 202, it was held that a contract in payment of attorney's fees by county commissioners' court, to get up bond records, prepare petitions for bond elections, arrange for printing bonds, obtain approval thereof by the Attorney General, and to get opinion of bond attorney as to the validity of bonds was not an invalid contract.

In the case of Roper v. Hall (Civ.App.) 280 S.W. 289, it was held that the authority of the commissioners' court to make contracts in behalf of a county was limited to that conferred expressly or impliedly by the constitution and statutes and that the commissioners' court was impliedly authorized by such constitution and statutes to contract with an individual for the compilation of taxation data.

In the case of Galveston County vs. Gresham, supra, it was held that Galveston County Commissioners' Court having broad powers to construct a seawall, has authority to employ an attorney to aid in carrying out that power by appearing before the River and Harbors Committee of Congress to explain and urge its approval of the proposed improvement and the grant of Federal aid in the construction thereof.

We believe it is unnecessary to cite further authority on this proposition as it is our opinion that under the decisions of this State a county has the authority to contract with an attorney or representative to secure for it any right that the county may have under the law and to agree to pay a reasonable compensation for such service. We therefore answer your first question in the affirmative.

It is the desire of this office, however, in connection with the affirmative answer given to the question above presented, to point out the difference between a valid contract for professional services to appear in behalf of an individual, county or other body to espouse its cause before governmental agencies and a "lobbying contract" which is void as against public policy and denounced by Arts. 179-183, Vernon's Penal Code of the State of Texas.

The doctrine of our Texas courts is in entire accord with the authorities generally throughout the country, elucidated (3 Williston on Contracts, Art. 1727) thus:

"It has been said by the Supreme Court of the United States, in regard to the presentation to Congress of a claim against the United States: 'We entertain no doubt that in such cases, as under all of the circumstances, an agreement, express or implied for purely professional services is valid. Within this category are included drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them orally or in writing, to a committee or other proper authority, and other services of like character. All of these things are intended to reach only the reason of those sought to be influenced. They rest on the same principle of ethics as professional services rendered in a court of justice, and are no more exceptionable.' On the other hand, personal solicitation of individual members is a method which cannot be made the subject of contract."

In 1 Cooley's, Constitutional Limitations (8th Edition) page 280, in discussing this proposition, the following is said:

"The law also seeks to cast its protection around legislative sessions, and to shield them against corrupt and improper influences, by making void all contracts which have for their object to

influence legislation in any other manner
than by such open and public presentation of facts,
arguments and appeals to reason as are recognized
as proper and legitimate with all public bodies.
While counsel may be properly employed to present
the reasons in favor of any public measure, to the
body authorized to pass upon it, or to any of its
committees empowered to collect facts and hear ar-
guments, and the parties interested may lawfully con-
tract to pay for this service, yet to secretly ap-
proach the members of such a body with a view to in-
fluence their action at a time and in a manner that
do not allow the presentation of opposite views, is
improper and unfair to the opposing interests; and
a contract to pay for this irregular and improper
service would not be enforced by the law."

The following is quoted from the opinion of the Court
of Civil Appeals at Fort Worth in the case of Graves & Houtchens
vs. Diamond Hill Independent School District reported in 243 S.
W., p. 638:

"In the recent words of Williston on contracts,
Vol. 3, Sec. 1727, the author thus states the ruling:

"'An agreement by a legislator to exercise his
judgment in a particular way is not binding law. His
promise, if without consideration, is not binding
for that reason, and if he bargains for considera-
tion it is illegal. A contract with one who is not
a legislator, to induce legislators to vote in a par-
ticular way, is open to similar objections if the
methods of inducing legislative action are improper.'"

In the case of Davis vs. Texas Farm Bureau Cotton As-
sociation (Comm. of App., Sec. B) 62 S.W.(2d) 90, which was a
suit on a contract to pay an attorney to appear before the Texas
Legislature in behalf of a certain bill pending before it and
to urge its passage, the Commission of Appeals Section B, speak-
ing through Justice Ryan, said:

"Whenever any such paid or employed representa-
tive goes beyond the limitation of the statute (Art.
180, 181, Penal Code of Texas) and singles out indi-
vidual legislators, privately, and either by argu-
ment or otherwise endeavors to influence their action,
he transgresses the law, however fair in intent he
may be."

Further quoting from the opinion in the Davis case, su-
pra:

"The distinction between valid and invalid contracts, with paid or employed representatives to further legislation appears to be that in the former the services or the result thereof are used, or designed to be used, openly and publicly, either before the Legislature itself or some committee thereof as a body, while in the latter a person is employed to exert his personal influence, whether great or little, with individual members, or to labor privately in any form with them, out of the legislative halls in favor of or against any act or subject of legislation. Personal influence exerted over the individual members of a Legislature will vitiate a contract, the consideration of which is the procurement of legislative action. Such a contract should be held void, though there is no actual corruption in the particular case. Although the contract may not expressly provide personal solicitation, it will be declared illegal if it appears that in carrying out the contract it is necessary to resort to 'lobbying'; it is enough that such is the tendency of the contract. 6 R.C.L. 733."

The memorandum submitted with your request for an opinion presents the following facts:

"The representative, if employed, will appear before Congress or Congressional Committees and before various Federal Agencies and will openly and publicly represent the County of Galveston in the presentation of data and information in connection with various projects of the county of Galveston. The said representative will not attempt to exercise his personal influence but only present before the various agencies in their official capacities the facts upon which the County of Galveston relies in attempting to obtain Federal aid in connection with various projects. It is contemplated that the said representative will also be employed for the same purposes insofar as the interests of the City of Galveston are concerned, and a portion of his expenses will be paid by the City of Galveston and the Galveston Chamber of Commerce."

A contract with an attorney or other representative to represent Galveston County in the manner set out above would, in the opinion of this department, be a valid contract for professional services, but would remain such only so long as same was carried out strictly in accordance with the factual situation above presented and in such a manner as not to infringe upon the principles of law above discussed.

Passing to the second question presented in your memorandum, it is the opinion of this department that since Galveston County has the authority to employ a representative to represent the County's interests before Federal Agencies in Washington with reference to specific projects coming within the definition of "county business" as used in Art. 5, Sec. 18 of the Constitution of Texas, that it would have the authority to employ such representative on an annual basis to represent the County in connection with all legitimate projects pending before Federal Agencies in Washington, so long as this representation was confined to projects which constituted "county business" as used in Art. 5, Sec. 18 of the Constitution.

Your second question is, therefore, answered in the affirmative.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Douglas E. Bergman
Douglas E. Bergman, Assistant

APPROVED APR 23, 1946
/s/ Carlos Ashley
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

DEB/bw:wb