Argued February 4, affirmed April 29, 1953

# SHEPARD & MORSE LUMBER CO. *v.* COLLINS
256 P. 2d 500

*Clarence R. Wicks,* of Portland, argued the cause for appellant. With him on the brief were Hugh L. Biggs, George H. Fraser, and Hart, Spencer, McCulloch, Rockwood and Davies, of Portland.

*Richard R. Carney,* of Portland, argued the cause for respondent. With him on the brief was Kneland C. Tanner, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK and PERRY, Justices.

LUSK, J.

The petitioner, Shepard & Morse Lumber Company, a corporation, commenced this proceeding in Columbia County against the defendant (designated respondent in the petition), Charles A. Collins, to obtain specific performance of an agreement claimed to be an arbitration agreement under §§ 11-601 to 11-613, both inclusive, OCLA, and an order abating an action brought by the defendant against petitioner. The court sustained a demurrer to the amended petition, and, the petitioner having refused to plead further, decree for the defendant was entered from which this appeal is prosecuted. The contract which gives rise to the controversy reads as follows:

> "The employee, CHARLES A. COLLINS, was injured on the 14th day of February, 1949, while in the employ of the employer, SHEPARD &

MORSE LUMBER COMPANY, and in consideration of the mutual promises and agreements herein, it is hereby agreed as follows:

"(1) The employer agrees to pay the employee the sum of $45.63 for the period from February 14, 1949 to February 28, 1949 (12½) Inc., the receipt whereof by the employee is hereby acknowledged, and the sum of $21.90 per week thereafter during the time that the employee is temporarily totally disabled on account of said injuries.

"(2) The employer further agrees to pay the employee for any permanent disability that may result from said accident at the rates provided in the Workmen's Compensation Law of the State of Oregon, as at present in force, which the parties agree to adopt for such rating purposes only; the employer also agrees to furnish all necessary medical and surgical attendance and hospital accommodations as provided by said Workmen's Compensation Law.

"(3) The employer further agrees that upon application made within two years from the last payment of compensation hereunder, the employer will continue the payment of compensation in accordance with the terms of this agreement in the event there shall be a recurrence or aggravation of the disability resulting from said injury.

"(4) The termination of temporary total disability, the extent of permanent disability, if any, and the recurrence or aggravation of any disability and the recovery therefrom, shall be determined in the first instance by the attending physician.

"(5) If the decision of the attending physician is not available for any reason, or if either party is dissatisfied with the decision of the attending physician, then the employer and the employee shall each select one duly licensed physician and surgeon to serve as arbitrators, and if these two are unable to agree, then said arbitrators shall select a third duly licensed physician and surgeon and the deci-

sion of two or more of the arbitrators shall be final and binding upon both the employer and employee.

"(6) Except for the payments to be made by the employer under this agreement, the employee hereby releases and discharges the employer from all other claims and demands whatsoever on account of said injuries.

"Dated at Westport, Oregon, this 14 day of March, 1949.

"SHEPARD & MORSE LUMBER COMPANY
"Employer
"by A. W. Laurence
"John E. Swint
"Witness
"Charles A. Collins    (SEAL)
Charles A. Collins    Employee
"Richard C. Collins
"Witness."

The amended petition alleges that on February 14, 1949, the defendant was an employee of the petitioner and was injured while engaged in the performance of his duties, and that on the 14th of March petitioner and the defendant entered into the agreement above set out. It is further alleged that on or about August 23, 1949, defendant's attending physician determined the extent and degree of respondent's disability resulting from his injuries, whereupon petitioner advised defendant of his final rating and tendered payment in accordance with the terms and provisions of the contract, but defendant indicated to petitioner that he was dissatisfied with the findings of his attending physician. Petitioner thereupon requested that the dispute be submitted to arbitration in accordance with the agreement, but the defendant refused. It is further alleged that on September 22, 1949, defendant commenced an action against petitioner in the Circuit Court of the State of Oregon for the County of Mult-

nomah to recover $100,000.00 general damages and additional special damages which defendant alleges he suffered as the result of the injury in question. The petitioner prayed that this action be abated and that the parties be ordered to proceed with arbitration of defendant's claim in the manner provided in the contract.

The principal question for decision is whether the agreement in the contract to submit the questions of the termination of defendant's temporary total disability and the extent of his permanent disability, if any, to the decision of three licensed physicians and surgeons is an arbitration agreement within the meaning of our statute. The relevant provisions of OCLA are as follows:

"§ 11-601. All persons desiring to settle by arbitration any controversy, suit or quarrel, except such as respect the title to real estate or the terms or conditions of employment under collective contracts between employers and employes or between employers and associations of employes, may submit their differences to the award or umpirage of any person or persons mutually selected."

"§ 11-602. A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall, provided the arbitration be held within the state of Oregon, be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"§ 11-603. A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration, described in section 11-602, shall petition the circuit

court, or a judge thereof, for an order directing that such arbitration proceed in the manner provided for in such contract or submission. Ten days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by law for personal service of a summons. The court, or a judge thereof, shall hear the parties, and upon being satisfied that the making of the contract or submission or the failure to comply therewith is not an issue, the court, or the judge thereof, hearing such application, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract or submission. [Here follow procedural provisions for determining issues of the making of the contract or submission or failure to comply therewith.]''

''§ 11-604. If any suit or proceeding be brought upon any issue arising out of an agreement which contains a provision for arbitration of the same matter in controversy in such suit or proceeding, then, upon application, any judge of a circuit court, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall abate the action so that arbitration may be had in accordance with the terms of the agreement; said application to be heard similarly to hearings on motions.''

. ■ It cannot be disputed that if the agreement is one for an appraisal rather than arbitration, as those terms have been heretofore understood, the statute does not apply and the petitioner is not entitled to the relief which it seeks. ''The distinction between appraisal and arbitration'', says Professor Williston, ''is of great importance, as appraisals are subject at common law to rules different in many respects from those applied to arbitrations, and the modern arbitration statutes are held not to apply to appraisals.'' 6 Williston on Contracts (Rev ed) 5375, § 1921A. The follow-

ing cases, among many others, support the statement that modern arbitration statutes do not apply to appraisals. *In re Fletcher,* 237 NY 440, 143 NE 248; *Petition of American Insurance Co.,* 208 App Div 168, 203 NYS 206; *Citizens Building v. Western Union Telegraph Co.,* 120 F2d 982; *Bewick v. Mecham,* 26 Cal2d 92, 156 P2d 757, 157 ALR 1277; *Poland Coal Co. v. Hillman Coal & Coke Co.,* 357 Pa 535, 55 A2d 414; *Franks v. Franks,* 294 Mass 262, 1 NE2d 14.

Upon this subject Professor Williston says in the section of his work from which we have just quoted:

"* * * It is frequently difficult to determine whether the agreement is one of arbitration or appraisal; but the final test should be whether or not the parties intended the 'arbitrators' to determine ultimate liability or merely facts incidental thereto. Other tests are often laid down by the courts; but these seem question-begging and unhelpful. The leading examples of appraisal are provisions for determination by third parties of the *amount* of loss in insurance policies. In general, provisions in contracts for price or value fixing, appraisal of loss or damage to property, partition of property, fixing of boundary lines, ascertainment of quality or quantity of commodities, or verification of the performance of a contract, by third parties, are likely to be held to partake of the character of appraisals.

"If, however, no agreement for appraisal has been made previously, a dispute that arises concerning valuation, balancing of accounts, etc., may by proper agreement be submitted to arbitration. Furthermore, where there is a general arbitration clause, though the matter in dispute is one which taken by itself would normally be the subject of an appraisal, for example, the value of work done, the proceeding will be considered an arbitration. Under normal circumstances, it is thus the form of the agreement, that is, whether it allows third

parties to determine fact alone or liability as well, which determines the nature of the proceedings, and not the subject matter submitted."

■ It should be noted that the agreement in question relates to a dispute that may arise in the future, not to one in existence at the time the agreement was made and which is commonly referred to as a submission agreement. Sturges, Commercial Arbitrations and Awards, 44, § 13. As the passage from Williston just quoted indicates, where no agreement for appraisal has been made previously a dispute concerning valuation may by proper agreement be submitted to arbitration. See *Franks v. Franks,* supra. The distinction makes inapplicable here some of the decisions cited by the petitioner. Other decisions relied on by petitioner involved executed awards. There is a clear distinction between the rules applicable in such cases and those which govern executory agreements. *Rueda v. Union Pacific Railroad Co.,* 180 Or 133, 175 P2d 778.

In the Rueda case we used the term "limited arbitration agreement" as the equivalent of appraisal. It was applied "to disputes arising in the future but in which the issues for determination are narrowly defined, such as value, amount of damage, compliance with specifications and the like". (p. 139) In that case we recognized the common-law rule that executory general arbitration agreements for the determination of future disputes, including even the issue of liability, were not specifically enforceable and could not be pleaded in bar to an action on the contract, while an appraisal agreement, if expressly or by implication made a condition precedent to action on the contract, could be a defense to such an action, and we expressly approved *Anderson v. Hartford Acc. & In. Co.,* 152

Or 505, 53 P2d 710, 54 P2d 1212, as a proper application of the distinction.

Except that it did not involve the arbitration statute, the Anderson case it not to be distinguished from the case at bar. It grew out of an agreement between an injured employee and his employer's insurance carrier. As here, the insurance company agreed to compensate the injured employee in accordance with the rates prescribed by the Oregon Workmen's Compensation Law. The contract contained a provision that, if there should be a dispute as to whether payments should be terminated for the reason that disability had ceased, the question was to be submitted to medical arbitrators. It is, of course, clear that, so far as the question which we are now considering is concerned, that is to say, whether the contract here is for appraisal or arbitration, the two contracts are identical. Plaintiff in the Anderson case brought an action on the contract without first having submitted the question of termination of his disability to decision of the arbitrators. We held that compliance with the provision for a reference was a condition precedent to maintenance of the action, citing, among other authorities, *Ball v. Doud,* 26 Or 14, 37 P 70. In the Rueda case we said, referring to the Anderson decision, that it "involved only a limited arbitration agreement [i.e., appraisal] which may at common law be made a condition precedent to court action and thus irrevocable." 180 Or 168. That, indeed, is the necessary implication of the decision, for, as we shall see, the common-law rules respecting the distinctions between arbitration and appraisal had previously received the sanction of this court, and they were more recently applied in *Halvorson v. Blue Mt. Prune Growers Co-op.,* 188 Or 661, 673, 674, 214 P2d 986, 217 P2d 254.

In *Meyers & Co. v. The Pacific Construction Co.*, 20 Or 603, 27 P 584, a provision in a construction contract that any dispute or difference between the parties as to the classification of work, or otherwise, should be referred to the decision of the divisional engineer of the defendant company, was held to be a condition precedent to an action by the contractor to recover for work and labor done under the contract. The opinion does not mention the distinction between appraisal and arbitration; but *Ball v. Doud*, supra, which, as we have seen, was relied on as a precedent in the Anderson case, points out that the basis of the decision in *Meyers & Co. v. The Pacific Construction Co.* is that the agreement was one for appraisal rather than arbitration. *Ball v. Doud* called for construction of a clause of a building contract which provided for determination by a board of three competent persons of any dispute as to the value of extra work and materials necessitated by a change in the plans and specifications. Compliance with the condition was held to be a condition precedent to suit. The court said that an agreement to refer all matters of dispute that may arise under an executory contract would oust courts of jurisdiction, and, therefore, such an agreement does not bar a party's remedy by action at law or suit in equity; but that a party cannot withdraw from an agreement to submit a particular question to the judgment of a third person for the purpose of ascertaining a particular fact, and such a provision is a condition precedent and must be complied with before any cause of action exists. The court then referred to *Scott v. Avery*, 5 House of Lords Cases 811, which, it was mistakenly said, "held that no agreement of the parties can oust the courts of law of jurisdiction, but that a covenant to submit some particular fact, or to determine an amount due from one party

to another, was a condition precedent to any right of action.'' It was further said ·that by the holding in *Meyers & Co. v. The Pacific Construction Co.,* ''the distinction in *Scott v. Avery,* was established as the rule of interpretation in this state.'' The fact is, as pointed out in the Rueda case, that *Scott v. Avery,* the leading opinion in which was delivered by Lord Campbell, rejected the doctrine that a general arbitration agreement ousted the courts of jurisdiction and held that such an agreement was a bar to an action brought on the contract involved in that case. This misinterpretation of *Scott v. Avery* by this court led us to say in the Rueda case that the decision in *Ball v. Doud* ''is involved in contradictions'' (180 Or 159), as indeed it is; but, however inapposite may have been the references to *Scott v. Avery,* it cannot be gainsaid that *Ball v. Doud* is authority for the proposition that at common law, while an appraisal agreement may be pleaded in defense as a condition precedent to suit or action, an arbitration agreement may not.

■ It should be observed in passing that, notwithstanding *Scott v. Avery* and the strictures of eminent American judges on the ouster-of-jurisdiction rule, ''the numerical weight of authority still appears to sustain the statement by Williston to the effect that the general arbitration agreement which provides for the determination of ultimate legal liability 'encounters the common-law hostility previously alluded to and is held illegal.' '' *Rueda v. Union Pacific Railroad Co.,* supra, p. 151. See, also, *Kulukundis Shipping· Co. v. Amtorg Trading Corp.,* 126 F2d 978, 984; *Red Cross Line v. Atlantic Fruit Co.,* 264 US 109, 68 L ed 582, 44 S Ct 274; *United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co.,* 222 Fed 1006; Williston, op. cit., 5373, § 1921A. It is not necessary,.

however, to pursue that subject. "The primary purpose of the Arbitration Law", it is said by Lehman, J., in *In re Fletcher,* supra, "was to make valid and enforceable provisions for arbitration which had previously been regarded as contrary to public policy * * *." The statute of this state, like that of New York, declares valid, irrevocable and enforceable contracts in writing to arbitrate controversies thereafter arising out of such contracts, and provides a procedure to secure their specific enforcement. The statute does not apply to appraisals, and the question whether the agreement in this case is an appraisal or arbitration agreement must be determined in accordance with common-law rules. Under our own decisions, and in particular *Anderson v. Hartford Acc. & In. Co.,* supra, as interpreted in Rueda, the agreement here is one impliedly "making it a condition precedent to litigation that there be an award determining some preliminary question of subsidiary fact," *Kulukundis Shipping Co. v. Amtorg Trading Corp.,* supra, upon which liability is to be contingent. That preliminary question relates to the physical condition of the defendant. Petitioner, indeed, has expressly, and we think properly, conceded in its opening brief that this is the effect of our decisions. In anticipating defendant's contention that petitioner could obtain full relief in the action at law in Multnomah County by filing an answer in equity under § 9-102, OCLA, petitioner argued that the agreement for reference to a board of physicians and surgeons was a complete defense to the law action, and hence no pleading in that action which sought a specific performance of the agreement would be permissible because that relief would not be material to a defense of that action. In support of this contention the brief says of the contract involved in this case:

"This agreement is only a limited, rather than general, arbitration agreement in that the arbitrators are only to ascertain certain facts and will not determine ultimate liability", citing the Anderson, Rueda and Halvorson cases and Williston, op. cit., § 1921A. The brief proceeds: "These decisions hold that under common-law arbitration rules such an agreement can be set up as a bar to an action. However, the agreement is not specifically enforceable." These statements, though undoubtedly not so intended, amount to a concession of the defendant's demurrer. In the reply brief, however, the contrary is vigorously argued, and decisions from other jurisdictions are called to our attention which, it is contended, support the opposite construction of the agreement. In effect we are asked to reconsider and overrule our prior decisions. That would be a tempting invitation were it not for the fact that there is no clear weight of authority or judicial reasoning which should impel us to such a course. Professor Williston says that the distinction between arbitration and appraisal has outlived its usefulness and should be eliminated from the law. Williston, op. cit., 5380, § 1923. But he also says in a note at the same page, "But the modern arbitration acts would have to be remodeled to fulfill the precedural necessities existing in an appraisal." He refers to the decision in *McCullough v. Clinch-Mitchell Const. Co.*, 71 F2d 17 (CCA 8th), enforcing an agreement for the determination of all questions, including liability, by third parties (there being no statute) as "unique in American law", idem., p. 5374, Note 4. The distinction persists, and, if it is to be abolished, this should be accomplished, not by the courts, but by the legislature, as has been done in New York. See *Fitzgerald v. Continental Insurance Co.*, 275 App Div 453, 90 NYS2d 430.

We find nothing in *West v. Coos County*, 115 Or 409, 237 P 961, 40 ALR 1362, cited by petitioner, which conflicts with our ruling. In the first place that case involved an executed award, which, as we decided in Rueda, will be upheld notwithstanding common-law rules respecting executory arbitration agreements. In the opinion in the West case it was said: "Appraisers are selected to prevent, by appraisal, the arising of differences and not to settle disputes which have already arisen." (p. 418) Counsel for petitioner argue that the agreement before us is not of that kind. That may be questioned, for the language of the agreement is that a reference may be had, not only if either party is dissatisfied with the decision of the attending physician, but also "if the decision of the attending physician is not available for any reason." In that respect the agreement resembles the one in *In re Fletcher*, supra. It was provided that if Mr. Grosvenor Nicholas should exercise a right to purchase certain stock deposited in escrow the fair value of the stock on a date named should be determined by an appraisal thereof made by three arbiters. In a proceeding for the specific enforcement of this agreement it was held that it did not come within the New York Arbitration Law because it was not an agreement to settle a controversy between the parties, but to avoid a possible controversy by leaving the settlement of a question to third parties who were not expected to settle the matter in a quasi-judicial manner.

Moreover, the mere fact that the agreement speaks of the contingency of dissatisfaction with the decision of the attending physician, does not necessarily bring the case within the terms of the arbitration act, § 11-602, OCLA, which makes irrevocable "A provision in

any written contract to settle by arbitration a contro-
versy thereafter arising out of such contract". Thus,
in *Poland Coal Co. v. Hillman Coal & Coke Co.*, supra,
there was a contract for the lease of a coal mine with
an option to purchase, and an agreement, in the event
of the exercise of the option, that, *if the parties should
fail to agree* on the amount of recoverable coal then
remaining in the leased premises, the amount should
be determined by a named arbitrator whose decision
should be final and binding upon the parties. The
Pennsylvania Arbitration Act contains language identi-
cal with that in § 11-602, OCLA, above quoted. The
option was exercised and the parties failed to agree
upon the amount of the recoverable coal, but the court
held that there was no controversy within the meaning
of the statute. The court said:

> "* * * The only undetermined element in the
> transaction was the quantity of coal and there was
> no dispute about that quantity and there could be
> none because the parties had long before provided
> that the quantity of coal to be paid for was to be
> determined by Eavenson [the arbitrator named].
> There was no controversy, within the meaning of
> the word as used in the Arbitration Act, to be
> settled by an arbitrator. Eavenson was to calculate
> the remaining mineable coal tonnage by applying
> the rules of measurement customary in the profes-
> sion in which the parties agreed that he was skilled
> [citing authorities]."

Paraphrasing the language of the Pennsylvania
court, it could be said of this case that the only element
left undetermined was the extent of defendant's injury,
that is, "the termination of temporary total disability,
the extent of permanent disability, if any," and there
could be no dispute about those matters because the
parties had long before provided that they should be

determined by three physicians and surgeons, and compensation for whatever disability there might be made at rates prescribed by the Oregon Workmen's Compensation Law. Ultimate liability of the employer had already been agreed upon, contingent only on a finding by the arbiters of the fact of disability.

Decision of a question of the kind here presented is frequently made to depend in part at least on whether the agreement, properly interpreted, contemplates hearings on notice and the taking of testimony—a quasi-judicial proceeding—or a determination by experts based on their own investigation and knowledge. See *West v. Coos County,* supra, 115 Or 418. Thus, it is said in the Annotation in 157 ALR 1286, with abundant citation of authority:

> "It is a general rule of construction of contracts for the proposed purchase or sale of property that if all differences between the parties have been resolved and all matters adjusted except the price to be paid (or amount of damages for breach) the selection of a third person or persons to determine the price or amount according to a valuation unsettled at the time of their selection, in the absence of indications to the contrary, contemplates a reliance upon the individual judgment of such person or persons, particularly if they are selected because of their special knowledge of the subject matter, and so creates duties in nature ministerial, as distinguished from judicial or investigatory, and hence, broadly speaking, renders the act an appraisal, rather than an arbitration."

■ Under the agreement three physicians and surgeons were to determine the extent of defendant's disability. Obviously, it seems to us, the parties did not intend that three physicians and surgeons should conduct hearings and listen to testimony on a question

of this kind, but rather that they would base their determination upon their examination of the defendant, his medical history, and such other investigation as they would ordinarily make in similar cases, and on their expert professional knowledge. In other words, they would be charged with the duties of appraisers rather than arbitrators.

We have examined all the cases cited by petitioner. As previously indicated, some are distinguishable. Others are in point and are not in harmony with our ruling. In view of the state of our decisions, we think it would not be profitable to discuss in detail these authorities from other jurisdictions.

■ It should be added that the Arbitration Law would not, in any event, authorize the court to abate the Multnomah County action. Section 11-604, OCLA, provides for abatement of a suit or proceeding *"brought upon any issue arising out of an agreement* which contains a provision for arbitration of the same matter in controversy in such suit or proceeding" (italics added). The action in Multnomah County— which we may assume was brought under the Employers Liability Act—is not an action on the agreement or on any issue *arising out of the agreement,* but on issues arising out of the happening of an accident and the law applicable thereto. It is an action in tort brought in complete disregard of the agreement, and the abatement section of the law is, therefore, not applicable to this case.

It is unnecessary for us to comment upon matters discussed in argument with respect to future proceedings in the Multnomah County action, as these questions are not before us.

The decree is affirmed.