John SANDS, Plaintiff,

v.

UNION PACIFIC RAILROAD COM-
PANY, a corporation, Defendant.

Civ. No. 7532.

United States District Court
D. Oregon.

Dec. 27, 1956.

Clayton Hess, Portland, Or., for plaintiff.

Randall Kester, Maguire, Shields, Morrison & Bailey, Portland, Or., for defendant.

SOLOMON, District Judge.

This case is before the court on defendant's motions for dismissal and summary judgment. The plaintiff Sands is a railroad employee and member of the Brotherhood of Railway Carmen of America. He was employed by the defendant Union Pacific Railroad Co. as a carman. By virtue of a collective bargaining agreement between the Brotherhood and the Union Pacific, he had acquired certain seniority rights when in July, 1950, he suffered a severe back injury while on the job. Thereafter he sued Union Pacific for $50,000 for such injuries and for loss of past and future wages due to this injury. After introducing medical testimony tending to show an advanced arthritic condition in his spine which had been painfully aggravated by the injury and the opinions of two doctors that he should never do heavy work again, Sands settled his case for $14,000 in January, 1951.

Two and one-half months later, Sands presented himself to the railroad for re-employment, asserting his seniority rights under the collective bargaining agreement. Relying on the settlement in the personal injury case, the company refused to re-employ him or to give him a physical examination to determine his fitness for re-employment. Sands appealed this determination through company channels to the chief company official designated to handle such disputes. He failed to obtain reinstatement. He did not take his case to the National Railroad Adjustment Board (NRAB), an arbitration agency established by the Railway Labor Act [1] as part of the federal system for collective bargaining in the railroad industry.

Sands here alleges that Union Pacific breached the seniority provisions of the collective bargaining agreement by refusing to rehire him. He seeks specific performance of the contract through reinstatement with back pay or, in the alternative, damages for wrongful discharge. Our jurisdiction is predicated on diversity of citizenship and jurisdictional amount.

Defendant Union Pacific has moved for dismissal and summary judgment against Sands as to both of his alternative claims.

With reference to the claim for reinstatement, Union Pacific contends that specific performance of collective bargaining agreements in the railroad industry is under the exclusive jurisdiction of the NRAB and therefore beyond our power to grant.

---

1. 44 Stat. 578 (1926), as amended, 48 Stat. 1189 (1934), 45 U.S.C.A. § 153.

As to the alternative remedy of damages for wrongful discharge, Union Pacific maintains: (1) that Sands has failed to comply with an arbitration agreement in the contract; (2) that Sands waived his right to assert a claim for damages by using administrative appeal provisions under the contract and by seeking reinstatement; and (3) that Sands is estopped to allege wrongful discharge because he has collected for permanent injury in a prior action.

I agree that Sands' claim for specific performance in the form of reinstatement with back pay must be dismissed for lack of jurisdiction. The leading case of Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, held that claims for reinstatement and back pay under an existing bargaining agreement in the railroad industry are within the primary jurisdiction of the NRAB to the exclusion of state and federal courts.

Sands' alternative claim for damages for wrongful discharge is a common-law action in contract which, unlike the action for reinstatement, was not superseded by the administrative remedies provided in the Railway Labor Act.[2] This being a diversity case, the merits of this cause of action must be determined according to the law applicable in the courts of Oregon.[3]

Union Pacific first contends that the action would not be permitted under Oregon law because Sands has not complied with an arbitration clause in the contract. The contention poses two questions: Does the contract contain an agreement to arbitrate this dispute; and, if so, is compliance with the agreement a condition precedent to an action on the contract under Oregon law?

The contract states that disputes shall be appealed through company channels to the chief company official designated to handle such matters and, if no agreement is reached, "the case shall then be handled in accordance with the Railway Labor Act."

This act sets out a system for arbitration of disputes arising under existing collective bargaining agreements in the railroad industry.[4] It provides for the establishment of the NRAB consisting of four separate boards of arbitration and permits local arbitration boards to be established by the NRAB or by agreement of the parties. Disputes arising under collective bargaining agreements which are not settled by the company "may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."[5] Based upon this language, Sands contends that referral to the NRAB in a case of this character is optional under the Act and is therefore optional under the contract.

The Railway Labor Act neither authorizes nor prohibits court actions for wrongful discharge.[6] If such an action is to succeed, it must be authorized by the applicable state law. In my view, when the contract between the railroad and the union says that disputes are to be settled "in accordance with the Act," it means that disputes must be referred to the appropriate division of the NRAB for arbitration.

Does the Oregon law require compliance with this agreement to arbitrate as a condition precedent to an action on the contract?

Oregon law divides agreements to arbitrate future disputes into two types: the *general* arbitration agree-

---

2. Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; see Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795.

3. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188;

Transcontinental & Western Air, Inc., v. Koppal, 1953, 345 U.S. 653, 73 S.Ct. 903, 97 L.Ed. 1325.

4. Footnote 1, supra.

5. 45 U.S.C.A. § 153, First (i).

6. Footnote 2, supra.

ment, in which the parties agree to submit to arbitration all disputed questions including the ultimate question of liability; and the *limited* arbitration agreement (sometimes referred to as an appraisal agreement), in which the parties agree to arbitrate disputes over specific facts, but not the ultimate question of liability.[7]

In many cases it is difficult to distinguish the two types of agreements on this basis because the ultimate question of liability will often solely depend upon the determination of a specific fact, such as compliance with a specification or, as in this case, physical condition. To meet this difficulty, the Oregon cases give us an additional test. If the prescribed arbitration procedure is quasi-judicial in character with hearings on notice and the submission of evidence, it is of the general arbitration type. But if the arbitrators are themselves experts in the particular area of controversy and base their decision on their own investigations and examinations, then the arbitration would fall into the appraisal or limited arbitration category.[8]

Under Oregon common law, limited arbitration agreements must be complied with before court action is taken.[9] General arbitration agreements, on the other hand, need not be performed and may be revoked at any time before an arbitration award is made.[10] However, the scope of the latter rule has been limited by statute. The Oregon arbitration act provides that arbitration agreements which are to be performed in Oregon shall be irrevocable and enforceable and their execution a condition precedent to court action.[11] The statute has been interpreted to apply to general arbitration agreements only.[12] Since the statute by its terms applies solely to agreements to be executed in Oregon, general arbitration agreements to be performed outside of Oregon remain subject to common-law rules.

Our next problem is to determine the character of the arbitration agreement between Sands and Union Pacific. It is one which applies to future disputes generally. The designated arbitration tribunal is composed of union and railroad representatives rather than of neutral judges.[13] However, although the members are familiar with the field of railroading generally, they are not experts or investigators but decide the cases in a quasi-judicial manner on the basis of evidence after hearing both sides of the dispute.[14] Arbitrators should be impartial, but the fact that members of the tribunal may be somewhat biased by reason of their affiliation with a union or carrier was known to the parties at the time of their agreement and therefore will not prevent enforcement of the agreement.[15]

7. Rueda v. Union Pacific R. Co., 1946, 180 Or. 133, 139, 175 P.2d 778, 781; Shepard & Morse Lumber Co. v. Collins, 1953, 198 Or. 290, 256 P.2d 500.

8. Shepard & Morse Lumber Co. v. Collins, supra, 198 Or. at page 305, 256 P.2d at page 506.

9. Rueda v. Union Pacific R. Co., supra.

10. See Shepard & Morse Lumber Co. v. Collins, supra, 198 Or. at page 300, 256 P.2d at page 504; Ball v. Doud, 26 Or. 14, 20, 37 P. 70, 71 (1894).

11. Or.Rev.Stat. § 33.210 et seq.

12. Shepard & Morse Lumber Co. v. Collins, supra.

13. For a thoughtful discussion of the composition and operation of the NRAB as contrasted with judicial action in this field see Comment, Railroad Labor Disputes and the National Railroad Adjustment Board, 18 Univ.Chi.L.Rev. 303 (1951).

14. 45 U.S.C.A. § 153, First (j).

15. Rueda v. Union Pacific R. Co., supra, 180 Or. at page 171, 175 P.2d at page 793. However, this rule presumably would not require submission to the NRAB when the circumstances of the case make it unlikely that the NRAB could handle it properly; nor would it make final an NRAB award which was demonstrably the product of bias or other unfairness. For examples of such situations, see op. cit. supra note 13 at 311.

■ Applying the Oregon rules previously set out, I conclude that this is a general arbitration agreement. Since the chosen arbitrator, the NRAB, meets in Chicago, the arbitration is not to be performed in Oregon.[16] It therefore falls into the category of general arbitration agreements governed by common law, and its performance is not a condition precedent to court action.

This case is not controlled by my earlier decision in Peoples v. Southern Pacific Co., D.C.Or., 1955, 139 F.Supp. 783, affirmed 9 Cir., 1956, 232 F.2d 707, which held that Oregon law required an employee to exhaust his administrative remedies under an employment contract before he may bring an action at law.

The phrase "administrative remedies" was not there intended to include arbitration agreements. The Peoples case was an action for wrongful discharge by an employee who had not complied with contract provisions setting time limits for appeal through company channels. The contract provided that claims not timely appealed would be deemed abandoned. Appeal provisions of this kind give the company an opportunity to reconsider contested decisions. Until these appeals have been taken and rejected, the company's breach of contract is not final and therefore not actionable. Arbitration, in contrast, does not begin to operate until each party has reached a final position which conflicts with the position of the other.

Here, Sands unsuccessfully appealed his case to the highest designated company official, at which point the company took a final position. These were the administrative remedies with which we were concerned in Peoples. Beyond is the arbitration area with which we are here concerned and which is governed by a separate body of Oregon law.[17]

■ Union Pacific next contends that by seeking reinstatement through this administrative procedure, Sands waived any claim for wrongful discharge. It reasons that a claim for reinstatement is inconsistent with a claim for wrongful discharge and therefore the former precludes the latter on the theory of election of remedies. It also asserts that Sands, by asserting his administrative remedies under the contract, affirmed the contract and waived the earlier breach. There is no merit to either of these contentions.

16. It should be noted that it is permissible under the Railway Labor Act for the NRAB and for unions and carriers to establish regional boards, 45 U.S.C.A. § 153, First (w), Second. If such a board existed in Oregon and would handle this dispute if the arbitration agreement were to be enforced, my holding might be different. However, that situation would raise the further question of whether this type of dispute is excepted from the provision of the arbitration statute by the section reading:

"All persons desiring to settle by arbitration any controversy, suit or quarrel, *except such as respect* the title to real estate or the *terms or conditions of employment under collective contracts between employers and employes or between employers and associations of employes*, may submit their differences to the award or umpirage of any person or persons mutually selected." (Emphasis supplied.) Or.Rev.Stat. § 33.210. Whether the emphasized language describes disputes such as the present one arising under existing collective agreements or rather disputes over the terms of a contract being negotiated is a problem which I need not decide here but point out in order to clarify the limits of this decision.

17. Oregon law permits the parties to provide by contract that disputes shall be determined by one of the parties, Williamson v. North Pacific Lumber Co., 1902, 42 Or. 153, 70 P. 387, 532, or that an employe or officer of one of the parties shall act as arbitrator of a dispute. Rueda v. Union Pacific R. Co., supra. However, a distinction must be drawn between situations in which the decision of a party or its employe has the effect of determining the merits of the controversy and the rights of the parties under the contract, and situations in which the decision of such party or its employe merely determines the position of such party in the dispute. In the former case the law of arbitration would come into play; in the latter, it would not.

■ Finally, Union Pacific claims that it is entitled to summary judgment on the ground that Sands is estopped to allege that he is fit to return to work because in his personal injury action he received a substantial settlement after introducing expert testimony to establish his permanent disability.

This being a diversity case, it is necessary to apply the law of Oregon to a contention so vital to the outcome of the litigation. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079.[18] Oregon law provides general authority for an estoppel based on a position successfully asserted in earlier litigation.[19] However, there appears to be no Oregon case dealing with such an estoppel in a situation like the present one, in which the litigation did not culminate in a judgment but was nonetheless successful in the sense that it resulted in a favorable settlement. There is authority for the estoppel in similar cases in other jurisdictions,[20] and because it appears to be a logical extension of the principles expressed in the Oregon cases, I accept it as Oregon law.

The leading authority for this estoppel is Scarano v. Central R. Co. of New Jersey, supra, an action for wrongful discharge in which plaintiff had sued and recovered for permanent injury in a prior action. The court stated that "[a] plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." 203 F.2d 510, 513.

After observing that each case must be decided under this rule on its own merits, the court held that the estoppel would lie in that particular case. In support of this conclusion the court noted that permanent injury had been alleged in the complaint, plaintiff had presented proof of it, the jury returned a substantial verdict for him, and he settled the case for a somewhat smaller amount which by its size indicated that it was intended to compensate him for loss of earnings for at least a substantial future period.

In Sands' personal injury action, he alleged injury for an indefinite period only, but his proof of damages was directed to proving permanent injury. Sands called two physicians, one of whom was retained by Union Pacific. Both agreed that Sands had been developing an osteo-arthritic condition for several years which was calcifying the joint surfaces of the vertebrae in his spine and that although he had suffered no pain up to the time of his accident in 1950, the condition was then aggravated by a displacement of one of the vertebrae which caused frequent severe pain.

Sands' doctor testified that the grease cap normally covering the joint surfaces had long since disappeared and the pain suffered by Sands was caused by the bare bone surfaces rubbing together. To relieve this pain required fusion of the displaced vertebra with its neighbors, an operation which would make an invalid of Sands.

Sands himself testified that his condition had not improved in the year and one-half since the injury, although he had not been working; that he had steady pains in his back which occasionally became acute; and that he could not go back to work because he could not bend over to pick things up as his job required him to do.

Both doctors said that Sands should never again do heavy work. Before the case went to the jury, Sands settled for $14,000. His lost wages to

---

18. State law was applied to similar estoppel situations but without discussion of the choice of law question in Scarano v. Central R. Co. of New Jersey, 3 Cir., 1953, 203 F.2d 510; Nola Electric Co. v. Reilly, D.C.S.D.N.Y.1948, 93 F.Supp. 164.

19. See Couch v. Scandinavian-American Bank, 1921, 103 Or. 48, 197 P. 284, 202 P. 558, 203 P. 890; In re Mead's Estate, 1933, 145 Or. 150, 164, 26 P.2d 1103, 1108.

20. E. g., cases cited Footnote 18, supra.

that time were about $5,000 and he was past 60 years old. Under these circumstances it seems clear and I find that the settlement was intended to cover permanent injury as well as loss of future earnings.

The only basis for distinguishing this case from Scarano which has been offered by Sands is that the personal injury complaint in that case alleged permanent injury, while his own complaint alleged injury for an indefinite period only. I cannot accept this as an adequate basis for distinction. For the purposes of the Scarano rule, it is immaterial how Sands assumed his earlier inconsistent position, whether by pleading or proof. The essential facts are that he assumed it and obtained relief on the basis of it. Since both those facts exist, the Scarano rule applies and Sands is estopped from maintaining in this case that he is physically capable of returning to his old job.

The justice of this result is apparent when one considers the dilemma facing the railroad when Sands asked to return to work. The carman's job involves heavy labor. It is no job for a man with a bad back. As early as 1947, Sands had strained his back and was being treated for arthritis. The railroad allowed him to continue on the job, but he strained his back again in 1950. Under these circumstances, and in view of the medical testimony, it was not only possible but probable that Sands' chronic back injury would soon recur if he were permitted to come back on the job. If it did, the railroad might face a claim for damages for additional aggravation of his chronic back condition.

I think the railroad was justified in declining this risk. Sands was not entitled to re-employment unless physically qualified. Although the railroad did not have Sands physically examined at that time, it was apparent from the medical testimony at the previous trial that Sands was not and never would be physically fit to return to this work.

Since Sands himself introduced that testimony and received a settlement based upon it, he cannot now be heard to attack it.

I find that there is no genuine dispute as to any material fact on this issue of estoppel and that the defendant Union Pacific is entitled to a judgment as a matter of law. Defendant's motion for summary judgment is therefore granted.